MASSON CHEESE CORP.,
Plaintiff–Appellant,

v.

VALLEY LEA DAIRIES, INC.,
Defendant–Appellee.

No. 3–679A166.

Court of Appeals of Indiana,
Third District.

Oct. 29, 1980.

Rehearing Denied Dec. 8, 1980.

Richard D. Bonewitz, Hammerschmidt, Bonewitz & Miller, South Bend, for plaintiff–appellant.

Arthur A. May, May, Searer, Oberfell & Helling, South Bend, for defendant–appellee.

HOFFMAN, Judge.

Appellant Masson Cheese Corp. appeals a negative judgment on its complaint against appellee Valley Lea Dairies, Inc. Certain findings of fact and conclusions, along with the admission of two of defendant's exhibits, are challenged in the appeal.

Masson Cheese Corp. is a California based corporation operating as a manufacturer and distributor of cheese products. Valley Lea Dairies, Inc. is an Indiana corporation which acts as a marketing agent for the sale of dairy products as well as a billing and collecting agent for such sales. Swan Lake Enterprises, Inc., d/b/a Blue Valley Cheese, is a Nebraska based corporation engaged in the manufacture and distribution of cheese.

Prior to April 1975, Blue Valley sold products through Valley Lea and became indebted to it for $42,580.15. In April 1975, John Masson and Morris Forenella, the only shareholders of Masson Cheese Corp., each purchased 25% of the shares of stock of Blue Valley. Thereafter Masson Cheese Corp. advanced funds to Blue Valley, which in turn sold cheese to Masson Cheese Corp. to offset the advances. There was an understanding that Masson Cheese Corp. would purchase the entire product of Blue Valley. The cheese would be shipped from Blue Valley's plant in Nebraska to various outlets throughout the country. The billing was done through Masson Cheese Corp. which credited the account of Blue Valley for the value of the cheese shipped.

Sometime after Masson and Forenella acquired their interests in Blue Valley, but before June 1975, Roy Mitchell, president of Blue Valley, entered into an agreement with Valley Lea whereby the past debt would be repaid. According to the agreement Blue Valley was to sell cheese through Valley Lea. Valley Lea would then keep the proceeds equal to the price of 1,000 pounds of cheese and apply it to Blue Valley's account. John Masson had knowledge of this agreement.

In November and December 1976, Blue Valley had a surplus of cheese which it, with Masson's approval, sought to sell through Valley Lea. Valley Lea sold two loads of cheese to Lucille Farms Products and, pursuant to instructions from Blue Valley, remitted the proceeds, less the price of 1,000 pounds of cheese per load, to Masson Cheese Corp. A third load, however, was rejected by Lucille Farms. Roy Mitchell and John Masson decided to sell this cheese through Valley Lea.

The third load was sold to Campagna Brothers of Brooklyn, New York. Before the cheese was paid for, however, a dispute arose between Masson, Forenella and Blue Valley. Masson and Forenella relinquished their stock in Blue Valley and withdrew all other financial support.

Blue Valley informed Valley Lea of the split and suggested that it take some action to settle the past indebtedness. A plan was developed whereby Valley Lea applied the proceeds from the sale of the third load to Blue Valley's account and remitted to Blue Valley the amount in excess of the debt.

Masson Cheese Corp. brought suit against Valley Lea claiming that the cheese had been sold to Masson Cheese Corp. and it was entitled to the proceeds from the sale. The trial court found that title to the cheese had not passed to Masson Cheese Corp. and entered judgment for Valley Lea.

Masson Cheese Corp. contends that the following two findings of fact are not supported by the evidence, are contrary to the evidence and are in error:

Finding No. 4: "In April, 1975 John Masson and Morris Forenella each purchased 25% of the stock of Blue Valley which company was experiencing financial difficulties. As part of the arrangement in

buying 50% of Blue Valley stock, Masson *took control* of the entire product of Blue Valley. (Alleged error emphasized).

\* \* \* \* \* \*

Finding No. 6: "After Masson *took control* of Blue Valley, before June, 1975, Roy Mitchell, the president of Blue Valley, talked to Valley Lea concerning the indebtedness of Blue Valley to Valley Lea. As a result of the conversations, an agreement was entered into for the repayment of the past due indebtedness from Blue Valley to Valley Lea, which agreement was acknowledged by Roy Mitchell of Blue Valley and *agreed to by John Masson*." (Alleged error emphasized).

The scope of review for this Court is well settled. Where appellants have suffered a negative judgment in a bench trial in which the trial court has made specific findings of fact and conclusions of law, this Court is governed by Ind.Rules of Procedure, Trial Rule 52(A) setting forth the "clearly erroneous" standard. A finding is clearly erroneous and will be set aside only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding. *Alfaro v. Stauffer Chemical Co.* (1977), Ind. App., 362 N.E.2d 500.

■ With respect to Finding No. 4, the evidence is uncontradicted that as part of the arrangement in which Masson Cheese Corp. advanced money to Blue Valley, Masson Cheese Corp. would purchase the entire product of Blue Valley. The trial court indicated in its findings that the name "Masson" referred to Masson Cheese Corp. and not to John Masson personally. When the finding in question is read in its entirety it is clear that the trial judge found that Masson Cheese Corp. took control of the entire product of Blue Valley and not that John Masson or Masson Cheese Corp. took control of the Blue Valley Corporation. The finding is therefore not clearly erroneous.

■ In interpreting Finding No. 6, it is a recognized principle of law that findings will be construed together, and construed liberally, in favor of the judgment. *In re Marriage of Miles* (1977), Ind.App., 362 N.E.2d 171. It is clear that when this finding is read together with Finding No. 4, that by "control" the trial judge is referring to control of the product by Masson Cheese Corp. As stated above, such finding is not clearly erroneous.

■ There is evidence that John Masson was included in the conversations concerning the repayment of Blue Valley's debt to Valley Lea and agreed to the repayment. Contrary to the interpretation Masson Cheese Corp. gives to Finding No. 6, the trial court did not find that John Masson entered into a written agreement to repay the debt of Blue Valley. The finding merely states that John Masson agreed to the plan of repayment entered into between Blue Valley and Valley Lea. There is nothing in the finding to indicate that either John Masson or Masson Cheese Corp. agreed to pay the debt of Blue Valley. Although there is conflicting evidence as to John Masson's participation in, and agreement to the repayment plan, the finding will not be set aside as being clearly erroneous.

Masson Cheese Corp. next argues that Valley Lea's Exhibits A and B are irrelevant and should not have been admitted into evidence. These exhibits are copies of a letter in which the repayment agreement is set out. Exhibit B contains the signature of Roy Mitchell, president of Blue Valley, acknowledging the letter.

■ The law assumes any inappropriate evidence received during the course of a trial to the court is excluded by the court unless it is shown that the objecting party was prejudiced by its admission. *Glover v. Ottinger* (1980), Ind.App., 400 N.E.2d 1212. Masson Cheese Corp. makes no argument, nor does it allege that it was harmed by the admission of the exhibits. Additionally, relevancy is the logical tendency of evidence to prove a material fact and is a question for the discretion of the trial judge. *Indiana Nat. Corp. v. Faco, Inc.* (1980), Ind. App., 400 N.E.2d 202. The letters, along

with the testimony of witnesses, tend to show the relationship between John Masson, Masson Cheese Corp. and Blue Valley, along with Valley Lea's knowledge of that relationship. It cannot be said that it was an abuse of discretion to admit this evidence.

■ Masson Cheese Corp. contends finally that Finding No. 17 and Conclusions Nos. 2, 3 and 4 are in error. Essentially, the question raised by these alleged errors is whether the trial court was incorrect in determining that title to the cheese had not passed from Blue Valley to Masson Cheese Corp. and that Masson Cheese Corp. did not produce any evidence that Blue Valley's account had been credited for the third shipment of cheese. Any errors in this regard are harmless, however, inasmuch as this Court does not deem the issue of title dispositive. The judgment of the trial court must be upheld if it can be sustained on any legal theory which the evidence supports. *Thornton v. Pender* (1978), Ind., 377 N.E.2d 613.

■ Assuming, without deciding, that title to the cheese had passed to Masson Cheese Corp., the key question in this case is whether Valley Lea knew or should have known that title had passed. Although not directly applicable here, IC 1971, 26–1–2–403(2) and (3) are helpful by way of analogy. Those sections provide:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The record in this case reveals that Valley Lea had knowledge of a relationship between Blue Valley and John Masson, but was uninformed as to the details of the relationship. There is testimony by Steven Chisick, cheese sales manager of Valley Lea, that with regard to the third load of cheese sold through Valley Lea, he telephoned John Masson because he knew Masson was a principal stockholder in Blue Valley. In addition to telephoning John Masson, Chisick also telephoned Roy Mitchell, president of Blue Valley, to discuss what was to be done.

The testimony of John Masson discloses that, for the most part, he left the running of Blue Valley's business to Blue Valley. This is apparent from the transactions involving the cheese here in question. There is testimony that the price of the cheese was negotiated between Roy Mitchell and Steven Chisick. The billing for the cheese was to be done by Valley Lea pursuant to instructions from Blue Valley. Blue Valley instructed Valley Lea to make remittance for the first two loads of cheese to Masson Cheese Corp. These instructions were followed. As to the third load, Blue Valley instructed Valley Lea to apply the proceeds to discharge the prior debt. These instructions were also followed by Valley Lea.

While it is true that Valley Lea often had contact with John Masson, it is reasonable to infer from the evidence that this contact was because of his 25% ownership of Blue Valley and not as the majority shareholder of Masson Cheese Corp. This inference is further borne out by the fact that Valley Lea did not contact John Masson in regard to the third load of cheese after it was informed by Blue Valley that Masson had relinquished his stock ownership.

Masson Cheese Corp. asserts that Valley Lea had knowledge of its ownership interest by virtue of the remittance on the first two loads along with the listing of Masson Cheese Corp. as the shipper on the bill of lading for the third load. Masson Cheese Corp. overlooks the fact, however, that Valley Lea had in its files an invoice from Blue Valley to Masson Cheese Corp. for the first two loads which indicated that Blue Valley had indeed sold the cheese to Masson Cheese Corp. Such an invoice was not re-

ceived by Valley Lea for the third load. The invoices were consistent with the instructions by Blue Valley to remit the proceeds from the first two loads to Masson Cheese Corp. The absence of an invoice for the third load is consistent with Blue Valley's instructions to apply the proceeds for that load to reduce the indebtedness.

Masson Cheese Corp. correctly points out that according to the Uniform Commercial Code a bill of lading is a document of title and is a prima facie evidence of the genuineness of the facts stated in the document. *See* IC 1971, 26–1–1–201(15) and IC 1971, 26–1–1–202. The evidence is clear, however, that the bill of lading was prepared by Blue Valley and was never in Masson Cheese Corp.'s possession. The evidence is also clear that the cheese was manufactured in Nebraska by Blue Valley and shipped from Blue Valley's plant. Neither the cheese, nor the bill of lading, was ever in the possession of Masson Cheese Corp. In light of the evidence it cannot be said that Valley Lea knew or should have known by virtue of the documents that title had passed to Masson Cheese Corp.

Valley Lea is in a position similar to a buyer in the ordinary course of business. Blue Valley is in the position of a merchant who has been entrusted with goods in which it customarily deals. Valley Lea will not be held liable for dealing with Blue Valley as owner of the cheese when essentially, Masson Cheese Corp. put Blue Valley in the apparent position of owner.

Masson Cheese Corp. also advances the argument that by accepting the cheese and selling it, Valley Lea entered into a contract with Masson Cheese Corp. for the sale of the cheese. The record is clear, however, that Valley Lea is a marketing agent and never buys cheese. Furthermore, since Valley Lea neither knew, nor should have known that title to the cheese had passed to Masson Cheese Corp., there could not possibly have been a sale between these parties.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

1. *See* IC 1971, 26–1–9–202.

GARRARD, P. J., concurs.

STATON, J., concurs with opinion.

STATON, Judge, concurring.

Despite the tenacity with which Masson argues the question of title,[1] I am persuaded that this transaction lies within the purview of Article 9 of the Uniform Commercial Code.

Without a doubt, Masson agreed to advance funds to Blue Valley in return for the production of cheese. As noted by the majority, there was an understanding between the two parties that, in accordance with the agreement, Masson would purchase the entire product of Blue Valley. Unfortunately, there was no written contract to this effect. More importantly, there was no security interest created by Masson to protect its interest in the cheese produced by Blue Valley.

If a security interest had been obtained, Masson would have been required to perfect it. IC 1971, 26–1–9–302(1)(e). The transaction in question was not an isolated assignment of proceeds from the cheese, but rather an attempted assignment of all of the cheese produced by Blue Valley in return for money advanced by Masson. Even if Masson had succeeded in creating an unperfected security interest in the cheese produced, it would have been subordinated to the rights of Valley Lea. IC 1971, 26–1–9–301(1).

In essence, Valley Lea is a stranger to the agreement between Masson and Blue Valley. It should not be held to answer for Masson's failure to create a security interest in the third shipment of cheese.

I concur.