TUTHILL CORPORATION, FILL–RITE DIVISION, Appellant (Defendant Below),

v.

Norman L. WOLFE, Appellee (Plaintiff Below).

No. 3–1182A313.

Court of Appeals of Indiana, Third District.

July 12, 1983.

Rehearing Denied Aug. 24, 1983.

Edward L. Murphy, Jr., Grant F. Shipley, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellant.

David A. Lundy, Lundy and Associates, Fort Wayne, for appellee.

HOFFMAN, Presiding Judge.

Norman Wolfe was employed as a purchasing agent for appellant Tuthill Corporation, Fill-Rite Division. As a key employee, Wolfe participated in an Incentive Compensation Plan (ICP) administered by the Corporation. Terms of the plan were embodied in a writing recorded in the corporate minute book.

Wolfe was never fully apprised of the written terms of the ICP but rather was informed of its terms orally by his supervisor, Bernard Kapp. Kapp told Wolfe that he would receive a year-end bonus in an amount equal to one quarter of one percent of profits in excess of a specified level. A bonus check would be drafted for each member of the plan near the close of the year once the profits were determined.

Wolfe participated in the plan for several years until December 19, 1979, when he announced he would be leaving the Corporation in two weeks to enter into competition against it. Once notified the president of the Corporation fired Wolfe and withheld his bonus check which had already been drafted. Wolfe brought suit against the company seeking payment of his year-end bonus. A verdict was returned in Wolfe's favor in the amount of $8,202 compensatory damages, the amount of his bonus, and $4,500 punitive damages. This appeal results.

The issues raised by appellant have been consolidated and restated below:

(1) whether the trial court erred in failing to grant appellant's motion for judgment on the evidence;

(2) whether the trial court erred in reading certain instructions to the jury which had been tendered by Wolfe;

(3) whether the trial court erred in refusing to read certain instructions tendered by appellant; and

(4) whether the trial court erred in awarding Wolfe punitive damages.

Appellant first argues the trial court erred in refusing to grant its motion for judgment on the evidence. Several theories are forwarded in support of this claim. The first of these theories involves a determination of the effect of the written ICP.

According to appellant the written ICP could have been accepted by Wolfe once he was notified of its existence even though he lacked knowledge of the exact terms. Appellant directs us to *Alfaro et al. v. Stauffer Chemical Co.* (1977), 173 Ind.App. 89, 362 N.E.2d 500, and *Orton & Steinbrenner Co. v. Miltonberger* (1920), 74 Ind.App. 462, 129 N.E. 47, which it contends support its position. However, these cases present factual situations unlike that which exists in the present case.

In *Alfaro* employees were not permitted to see or know of the existence of a severance pay plan administered by the company. When employees were laid off and attempted to enforce their rights under the

severance pay plan, their claims were denied. The Court held the employees had no enforceable rights since they could not have accepted an offer and entered into a contract of which they had no knowledge.

*Orton & Steinbrenner Co.* presented a different situation. A new worker was informed of a bonus plan when he started work but had no notice of the entire terms of the bonus as they had been posted prior to his beginning employment. When the employee attempted to enforce his rights under the bonus plan, the Court found for him, determining he had accepted the offer even though he lacked knowledge of all the contract terms.

The present case involves a factual situation which falls between the gaps of these two decisions. Wolfe was told of the ICP as was the employee in *Orton & Steinbrenner*. However, as in the *Alfaro* case the specific terms of the ICP were hidden from Wolfe's knowledge. The written plan in the case at bar was recorded only in the corporate minute book which only shareholders and directors are entitled to see. Thus, unless Wolfe was a shareholder, he lacked the ability to see the terms of the ICP as did the employees of Stauffer Chemical Company in *Alfaro*.

■ Thus, in the case at bar Wolfe could not have entered into an agreement based on the written ICP since that written plan was hidden from him. Yet he is not prevented from entering into any bonus plan as there was an oral offer by his supervisor, unlike the situation in *Alfaro*. Therefore, if any ICP exists in this case, it must be based on the oral representations between Kapp and Wolfe as the written ICP never became an enforceable contract between the parties.

Appellant then switches course and argues that no enforceable contract exists upon which to base the jury's award of damages. In support of this contention appellant alleges there was no consideration to support a bonus contract. Two theories are forwarded by appellant in support of this allegation.

First, appellant claims that Wolfe failed to give his employer anything of benefit or suffer any detriment in return for the ICP. *Col. Mtg. Co. of Ind. v. Windmiller* (1978), 176 Ind.App. 535, 376 N.E.2d 529, cited by appellant, provides some most useful language for this decision where the court states: "The amount and terms for the bonus were sufficiently specific and clearly provision for bonus payments was *in contemplation of services yet to be performed* by Windmiller." (Emphasis added.) 176 Ind.App. at 538, 376 N.E.2d at 531. The consideration for the contract was the employee's future services. Likewise, in the case at bar Wolfe was offered inclusion in the ICP in the early part of the year, several years ago. His bonus would be based upon his performance from that point on into the future part of that year and future years.

■ The very purpose of the ICP was to motivate key employees to increase productivity which would increase corporate profits thereby insuring those key employees a higher salary based on those improved profits. The plan worked; the profits improved. Certainly the improved profits were a benefit to Wolfe's employer and therefore adequate consideration.

■ Appellant also contends there was no consideration for the reason that appellant failed to work a full year. In support of this proposition appellant places great reliance on *Montgomery Ward & Co., Inc. v. Guignet* (1942), 112 Ind.App. 661, 45 N.E.2d 337, which held a discharged employee had no right to his bonus since he had failed to complete a full year of employment. However, in *Montgomery Ward,* unlike the case at bar, the bonus plan specifically provided that a full year's employment was a prerequisite to receiving a bonus. As the written plan never became effective between the parties and no mention of a required length of service was mentioned in the oral presentation of the plan, no such service requirement will be read into the plan.

Further, at the time Wolfe was terminated the excess profits of the Corporation had already been verified and the bonuses com-

puted. An ICP bonus check had been drafted payable to Wolfe and was then withdrawn. By the admission of the Corporation's president the required service had been performed at the time the check was drafted; thus Wolfe satisfied the service requirement and his bonus check was withdrawn for other illegitimate reasons.

Next appellant presents a similar argument wherein it alleges the ICP was a mere "gratuitous promise" by Wolfe's employer and therefore unenforceable. As support for this proposition appellant cites *Spickelmier Industries v. Passander* (1977), 172 Ind.App. 49, at 52–53, 359 N.E.2d 563, at 565, which states: "'. . . A promise to pay an employee a bonus at the end of the year is a mere gratuity and not enforceable where the employee is not shown to have done or foregone something which otherwise he was not obliged to do or forego[.]'"

■ Appellant's position on this issue is virtually identical to its stance on the issue wherein it contends that Wolfe gave no consideration for the bonus. However, in *Spickelmeir* the employee was promised his bonus at the end of the year after he had finished performing his obligations. The ICP at issue in this case became effective several years before this dispute over a particular bonus. Since the corporate profits increased for the year, it may be presumed that the ICP had the desired effect of motivating key employees to improve company profits. Wolfe had received excellent employment reviews up until his termination. Thus, Wolfe engaged in conduct, induced by this offer of a bonus, in addition to his normal employment services and was entitled to his bonus.

Finally, appellant contends there was some notion of employee loyalty as a prerequisite to the ICP bonus at year end. Since Wolfe was disloyal by allegedly stealing plans for a company pump design to be used in competition against appellant, he had forfeited his right to his bonus. This argument suffers several flaws.

Initially it is noted that appellant cites no authority in support of its position which results in a waiver of any issue in this regard. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

■ Even had appellant preserved this error its argument is unavailing. The ICP written or otherwise makes no mention of employee loyalty. The purpose of the plan is to motivate key employees who are in positions which can most influence corporate profits to perform in a manner which improves those profits. In return those key employees are paid a proportionate share of the increased profits which presumably resulted from their performance. Thus while loyalty may implicitly enter into the scheme the bottom line of the plan is motivation which produces *increased profits,* and not loyalty.

Further, when Wolfe was terminated his ICP bonus check was withdrawn. As stated above according to the president of the company this bonus had already vested in Wolfe at the time the check was drafted. Also, at the time Wolfe was terminated and his bonus withdrawn, the company president had no knowledge of the alleged stolen plans and thus could not have based the withdrawal of the bonus on this fact.

In summation, withholding of Wolfe's ICP bonus payment is not a proper avenue for penalizing Wolfe for going into competition with his employer, leaving his employment, or stealing company plans. Other vehicles exist for prosecuting Wolfe for this behavior, if he is in fact guilty of it. Wolfe performed as required under the terms of the oral bonus plan. The written ICP never became effective between the parties. For these resons appellant was correctly denied its motion for judgment on the evidence.

Next, appellant contends the giving of several final instructions was error by the court. These instructions had been tendered by Wolfe and were adopted by the court as final instructions. Generally, these instructions covered various theories of contract law which could be resorted to by the jury to support a finding of a contractual relationship between the parties.

■ Throughout this section of its brief appellant repeatedly singles out a complained of jury instruction and attacks it. The more preferred analysis of jury instructions requires that a complained of instruction be viewed as a whole with all the instructions. *Indianapolis Newspapers, Inc. v. Fields et al.* (1970), 254 Ind. 219, 259 N.E.2d 651. When reviewing jury instructions this Court must determine that the particular instruction complained of is supported by the evidence and correctly states the law. *Dahlberg, Admx. v. Ogle et al.* (1978), 268 Ind. 30, 373 N.E.2d 159.

Appellant's first argument concerns the court's final Instruction No. 1 which charged the jury with the duty of interpreting the terms of the contract between the parties. First, appellant contends the instruction misstates the law since the only contract between the parties was the written ICP which is unambiguous and therefore not subject to a jury's interpretation. Then appellant shifts position and attacks the instruction on the ground that it does not instruct the jury in enough detail as to its duty to construe specific terms of a contract.

■ As to appellant's first contention: there is no written ICP contract between the parties for the reasons discussed above. Since there is no written contract between the parties, any contract which does exist between the parties pertaining to the bonus must be based on the oral representations of Wolfe's supervisor. The terms of an oral contract are a matter to be interpreted by the jury. *Annadall v. Union Cement etc. Co.* (1905), 165 Ind. 110, 74 N.E. 893.

■ Appellant's second contention that the instruction was inadequate also fails. Appellant argues that even though terms of an oral contract are determined by a jury the legal effect of the contract is still a matter for the court. It is appellant's contention that this oral agreement had no legal effect because it was nothing more

than an unenforceable promise of a gratuity. The instruction complained of, according to appellant, allows the jury to determine the effect of the agreement. As stated above whether the ICP agreed upon by the parties in this case is oral or written it is more than a promise of a gratuity and therefore enforceable. The instruction when read along with the other instructions adequately presents the jury with its duties and sufficiently informs it as to how to properly perform those duties.

Next appellant attacks the trial court's giving of final Instruction No. 7. This instruction dealt with unilateral contract formation. The jury was instructed that it should find for Wolfe if it determined that he performed his services as required with his supervisor's oral offer of a bonus in mind. According to appellant this instruction is not applicable to the facts of the case. Appellant argues that since there is a written ICP it is not a reward case and whether appellee had his supervisor's oral offer in mind at the time he performed his services is of no consequence.

■ However, it has been stated already in this opinion that the written ICP never became effective between the parties. Since this is the case any contract between the parties must be based on Wolfe's supervisor's oral offer. That being the case the jury is charged with the duty of interpreting the terms, and the facts would support a determination that a unilateral contract was formed. Therefore, the complained of instruction was not in error.

Appellant then argues the court erred in reading the jury final Instruction No. 5. This instruction informed the jury about implied contracts. It is appellant's contention that this instruction is not applicable to the case at bar. Appellant fails to cite any authority in support of its position which results in a waiver of any error in that regard. A.R. 8.3(A)(7).[1]

---

1. Both parties would be better served if counsel spent more time attacking the legal issues and citing legal authority for their argument rather than attacking each other's work product and citing what they consider "blackletter" principles of law without benefit of supporting authority.

Even had appellant cited authority its argument is unnavailing for the same reasons its arguments regarding Instruction No. 7 failed. There are sufficient facts to support an instruction on implied contracts because there is no written contract between the parties. Thus the giving of such instruction was not error.

Finally, appellant attacks the trial court's giving of Instruction No. 6 to the jury. This instruction informed the jury regarding requisite elements of contract formation. According to appellant the instruction misstated the law because it failed to inform the jury that it must find consideration by Wolfe to support the bonus contract.

The instruction informed the jury that if Wolfe "performed as required by the terms of the [bonus] offer" it should hold for him. Certainly if Wolfe performed as required by the terms of the offer thereby increasing corporate profits, he has given his employer something of benefit. Consideration sufficient to support a contract need only be some benefit which accrues to the promisor or some detriment suffered by the promisee. *Urbanational Develprs., Inc. et al. v. Shamrock* (1978), 175 Ind.App. 416, 372 N.E.2d 742. The jury was instructed that if Wolfe performed as required by the offer it should find for him. This is sufficient to cover the concept of consideration. Other instructions also refer to the concept of consideration as a necessary contract element.

Throughout this section of its brief appellant makes much of the allegedly confusing and contradictory instructions read to the jury by the court. In summation appellant contends that instructing the jury in such a confusing manner was error. While this Court readily admits the jury was instructed regarding many theories of recovery, nothing indicates the jury was confused by these instructions.

The case at bar presented a complex set of issues. Consequently, the instructions that were given in the case at bar covered several theories of recovery. Appellant need only blame itself for this as it is the party who drafted the ICP which includes no clear method of dealing with the type of problem raised in the case at bar. The ICP was then secreted from the inspection of participating employees while they were given minimal information regarding its terms. As a result there were several contractual theories which would support Wolfe's claim. The jury was presented these theories and reached its conclusion. There is sufficient evidence to support that conclusion. Thus it does not appear the jury was helplessly confused by the complexity of the litigation or the instructions.

Appellant next attacks the trial court's refusal to give certain of its tendered instructions. First, appellant alleges the court erred in refusing to read its tendered Instruction No. 2. This instruction dealt with contracts of employment and informed the jury that an employment contract of indefinite duration is unenforceable.

Appellant seems to rest its entire case on the written ICP. It never became effective between the parties; thus its correlation to Wolfe's employment contract is not relevant to the case at bar. Therefore, whether or not Wolfe had an enforceable employment contract is irrelevant since this case is precisely concerned with the bonus agreement.

Further, the instruction is a misstatement of the law regarding contracts of indefinite duration. Such employment agreements are regarded as "employment at will" contracts. While these contracts generally lack mutuality, once a party has begun performance in reliance upon the promise of another he has an enforceable right, though limited. *Marksill Specialties, Inc. v. Barger* (1981), Ind.App., 428 N.E.2d 65. Thus, the instruction tendered by appellant was refused for good reason as it misstated the law and was inapplicable to the case.

Appellant also argues the trial court erred in refusing to read to the jury its tendered Instructions Nos. 5, 6, 8, and 10. According to appellant the trial court effectively removed from the jury the issue of

consideration. Appellant's argument is not supported by the record.

■ As stated above the trial court's final Instruction No. 6, as well as other instructions, presented the issue of consideration to the jury. It is no error to refuse to give an instruction which was substantially covered by another instruction. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.

Next appellant raises two interrelated issues regarding the jury's award of punitive damages to Wolfe in addition to its award of compensatory damages. Appellant argues that: 1) the jury should not have been instructed on the issue of punitive damages as there was no evidence to support such instruction; and, 2) the evidence was insufficient to support an award of punitive damages.

■ The standard of proof requiring clear and convincing evidence in support of punitive damages was recently adopted by our Supreme Court in *Travelers Indemn. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349. This standard was not applied by the trial court in the case at bar. However, as the *Travelers* case was on direct appeal at the time of trial in the present case, we reverse and remand this case for retrial on the issue of punitive damages for the reasons stated in *Farm Bureau Mutual Ins. Co. v. Dercach* (1983), Ind.App., 450 N.E.2d 537.

For the reasons stated above the decision of the trial court is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

STATON and GARRARD, JJ., concur.