DESIGN INDUSTRIES, INC., Appellant–Defendant,

v.

William A. CASSANO, Appellee– Plaintiff.

No. 49A02–0111–CV–796.

Court of Appeals of Indiana.

Oct. 8, 2002.

 

Stephen J. Peters, David G. Field, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Appellant.

John H. Haskin, Philip J. Gibbons, Jr., Jeff S. Gibson, Haskin Lauter & LaRue, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Design Industries, Inc. ("Design") appeals the denial of its motion for summary judgment against William A. Cassano.[1]

Reversed and remanded.

### ISSUE

Whether the trial court erred by denying Design's motion for summary judgment.

### FACTS

In 1997, Design placed an employment advertisement in *Women's Wear Daily*, a trade publication, for the position of Executive Vice President of Sales. Cassano interviewed with the founder of Design, Joe Botkin. Design hired Cassano for the advertised position in December 1997.

The parties executed an employment agreement ("Agreement") setting forth the terms and conditions of Cassano's employment for a two-year period of employment from January 1, 1998 through December 31, 1999. Cassano's annual base salary was $150,000. Cassano also was to receive 1) bonuses specifically detailed in Design's Incentive Bonus Program, 2) a $1,000 per month car allowance, 3) health, life, and disability insurance, 4) two weeks of vacation, and 5) participation in a 401k program after completion of one year of service.

The Agreement provided that Cassano would receive nine months of severance pay if his employment was terminated for any good cause. In pertinent part, the Agreement provides:

If Employee shall fail to perform his duties faithfully, competently, or to the best of his ability in accordance with Section 3 hereof, for reasons other than as set forth in Section 10(a) [death, incapacity or disability] hereof, or for any other good cause, Employer may, upon written notice to Employee specifying the grounds for termination, terminate Employee's employment. In such event, Employee's salary shall terminate at the end of the ninth (9th) month following the month in which such termination of Employee's employment becomes effective and until the end of such ninth (9th) month shall be paid to Employee in accordance with Section 4 [salary paid in arrears in equal bi-weekly installments] hereof; provided, however, that the salary to be paid to Employee during such nine (9) month period shall be reduced by the amount of any salary paid to Employee by another employer during such period. Except as set forth in the following sentence, Employee shall not be entitled to any additional compensation as set forth in Section 5 [additional compensation] hereof not already earned. Notwithstanding the foregoing, Employer shall continue to provide (at

---

1. The trial court sua sponte entered an order that its determination on summary judgment constituted a final appealable order.

Employer's expense) to Employee for nine (9) months following termination of employment, health and life insurance identical to that which was provided to Employee prior to termination.

(App. 170).

On December 29, 1998, Design terminated Cassano's employment. Design paid Cassano severance for the nine-month period following Cassano's termination. Design reduced the severance by the amount of Cassano's travel expenses between New York and Indianapolis for the period between June and December 1998, approximately $19,700.[2]

Cassano filed his first complaint in October 1999. He filed his Second Amended Complaint in July 2001 claiming, inter alia, that Design's failure to pay the total amount of severance constituted a violation of the Indiana Wage Statute, Indiana Code §§ 22-2-6-1 through 22-2-6-4. Cassano sought reinstatement, lost wages, reinstatement of the benefits and bonus programs, liquidated damages under the Indiana Wage Statute, prejudgment interest, post judgment interest, attorney's fees, and costs.

Design moved for summary judgment. After a hearing, the trial court entered an order determining: 1) that a genuine issue of material fact existed as to Cassano's breach of contract claim, thus denying summary judgment as to that issue; 2)

that Cassano abandoned his claim regarding Design's failure to pay Cassano's bonus, thus granting summary judgment to Design on that issue; 3) that no genuine issue of material fact existed as to Cassano's claim of detrimental reliance, thus granting summary judgment to Design on that issue; and 4) that a genuine issue of material fact existed as to Cassano's claim, under the Indiana Wage Statute, I.C. § 22-2-6-1, that his salary continuation constituted "wages" under the statute, thus denying Design's request for summary judgment on that issue. The court concluded: "there being no just cause for delay, the Court expressly enters judgment in favor of defendant on counts two and three and against defendant on counts one and four pursuant to Rule 54(B) of the Indiana Rules of Trial Procedure." (App. 613).[3]

## DISCUSSION

Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Warner Trucking, Inc. v. Carolina Casualty Ins. Co.*, 686 N.E.2d 102, 104 (Ind.1997) (citing Ind. Trial Rule 56(C)). In reviewing the trial court's entry on a summary judgment motion, we apply the same standard used in the trial court, *i.e.*, whether there is no genuine issue of material fact

---

**2.** Design's summary judgment motion alleges that Cassano's failure to relocate to Indianapolis from New York by June 1998, as he had agreed, interfered with his duties and was at the heart of the difficulties leading to Cassano's termination.

**3.** Although summary judgment was entered on less than all the issues, the trial court's entry suggests that the order constitutes a final disposition of the entire cause. Also, the Chronological Case Summary ("CCS") notes that the cause was disposed of by summary judgment, and the case status was changed

from "open to disposed." (App. 5). Cassano argues that the denial of summary judgment for Design on two issues amounted to summary judgment for him. That is not the case. Despite the order and the CCS entry noting final disposition of the cause, the lack of summary judgment on two issues allows the parties to move forward on those two issues. Also we note, Design acknowledges on appeal that a genuine issue of material fact exists as to Cassano's breach of contract claim; thus, Design does not present that issue on appeal.

and the moving party is entitled to judgment as a matter of law. *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind. 1998). Where the facts material to the proceedings are not in dispute, this court determines whether the trial court correctly applied the law to the facts. *Grant County Comm'rs v. Cotton*, 677 N.E.2d 1103, 1104 (Ind.Ct.App.1997), trans. denied. The material facts are not in dispute here, and the parties agree that the only question is the application of the law to those facts.

As noted in footnote 3, Design specifically acknowledged in this appeal that a genuine issue of material fact exists as to Cassano's breach of contract claim. Accordingly, this appeal is directed solely to that 4th finding by the trial court. Thus, the only question is whether the severance payments constituted "wages" under the portion of the Indiana Wage Statute that provides the framework employers must follow in order to make deductions from employees' wages, Indiana Code §§ 22–2–6–1 through 22–2–6–4, as Cassano contends; or whether the severance payments were in the nature of a bonus or unearned benefit, not constituting "wages," as Design contends. Our analysis centers on the parties' Agreement, the statutes, and the common law.

The Agreement characterized the severance pay as "salary" that would continue for nine months after Cassano's termination. Cassano urges that he negotiated the salary continuation, Design agreed to the salary continuation, and that upon his employment with Design, the salary continuation became vested compensation to be paid over a nine-month period in the event of his termination.

Design contends that the amount is not a wage because it is not connected to work performed by Cassano and was not "earned" by Cassano. Design insists that the amount was in the nature of a bonus.

The goal in contract construction is to ascertain and give effect to the mutual intent of the parties. *Cox v. Town of Rome City*, 764 N.E.2d 242, 246 (Ind.Ct. App.2002). The language employed by the parties determines their intent at the time the contract was written. *Id.* "The words in the contract are to be given their common and ordinary meaning." *Id.*

The Agreement does not define the term "salary." Salary has been defined as:

> fixed compensation paid regularly (as by the year, quarter, month, or week) for services: STIPEND; *esp:* such compensation paid to holders of official, executive, or clerical positions—often distinguished from wage.....

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2003 (copyright 1971).

Black's Law Dictionary defines salary as:

> An agreed compensation for services—esp. professional or semiprofessional services—usu. paid at regular intervals on a yearly basis, as distinguished from an hourly basis. Salaried positions are usu. exempt from the requirements of the Fair Labor Standards Act (on overtime and the like) but are subject to state regulation. Cf. WAGE.

BLACK'S LAW DICTIONARY 1337 (7th ed.1999). Black's defines wage as:

> Payment for labor or services, usu. based on time worked or quantity produced. Cf. SALARY.

*Id.* at 1573. Thus, dictionaries do not define salary as bonus; however, they also do not define salary as wages.

The portion of the Indiana Wage Statute invoked by Cassano does not define "wages." The term is defined in another portion of the statute:

The term "wages" means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount.

Indiana Code § 22–2–9–1(b) (regarding wage claims); see also Licocci v. Cardinal Assoc., Inc., 492 N.E.2d 48, 55–56 (Ind.Ct. App.1986) (portion of statute providing for liquidated damages and attorney's fees does not define "wages," but definition found in I.C. § 22–2–9–1(b) and another section of the Employment Security Act, Ind.Code § 22–4–4–2[4] included commissions within definition).

The statutory definition of "wages" within Indiana Code § 22–2–9–1(b) does not exclude the definition of salary. Implicit in all the definitions is the concept that the payments are earned for services rendered. Yet, our inquiry into the definitions of "salary" and "wages" is but one aspect of the analysis of the Agreement.

The provisions of a contract are to be construed with reference to the whole, and a court should accept an interpretation that harmonizes the contract's provisions. Indiana Gaming Co., L.P. v. Blevins, 724 N.E.2d 274, 278 (Ind.Ct.App.2000). Courts should avoid construction of contract language that would render any words, phrases, or terms ineffective or meaningless. Id. "Courts should presume that all provisions included in a contract are there for a purpose and, if possible, reconcile seemingly conflicting provisions to give effect to all provisions." Id.

Here, the provision for the severance payments specifically applies only to the event of Cassano's termination. It is apparent, within that context, that the "salary" to be continued for nine months refers to the amount of severance pay rather than the payments as compensation for work performed. To find that the severance payments constituted earned wages for services performed would eviscerate the import of the severance payment provision, rendering it meaningless.

We turn next to a review of the common law. At first glance, a review of the common law regarding the characterization of payments made by employers before and after termination of employees seems to lack congruity.[5] However, common threads weave through the cases based upon evaluations of the circumstances including factors such as the employer's policy on such payments, whether the payments are earned as in the nature of compensation, and the existence of employment agreements.

In Alfaro v. Stauffer Chemical Co., 173 Ind.App. 89, 362 N.E.2d 500, 504–506 (1977), this court affirmed the trial court's determination that employees of a plant, sold as an ongoing concern, were not enti-

---

**4.** For unemployment compensation purposes, I.C. § 22–4–4–2 defines "wages" and includes the definition of "remuneration" within Indiana Code § 22–4–4–1 which provides in pertinent part, "all compensation for personal services, including but not limited to commissions, bonuses, dismissal pay, vacation pay, sick pay ... payments in lieu of compensation for services, and cash value of all compensation paid in any medium other than cash."

**5.** Indeed, our supreme court recently resolved the tension that arose in conflicting lines of

cases under Indiana Code § 22–2–5–2 regarding liquidated damages and attorney's fees for the failure to pay employees wages when due or the correct amount of wages. See St. Vincent Hosp. v. Steele, 766 N.E.2d 699, 702–705 (Ind.2002). We need not address the applicability of that portion of the Wage Statute inasmuch as summary judgment was entered for Design on Cassano's claim under that portion of the statute, and Cassano did not raise that issue on appeal.

tled to severance pay because the written policy thereon was maintained on a confidential basis and could not have been a condition of employment or relied upon by the employees, and such severance pay was granted only when employees were not employed after closing a plant or some other termination. Implicit in *Alfaro* is the determination that the severance pay did not constitute wages because the company had no discretion to withhold wages.

In *Morton v. E–Z Rake, Inc.,* 397 N.E.2d 609, 613 (Ind.Ct.App.1979), this court determined that an executive with an employment contract, which referred to his compensation as a monthly base amount plus 10% of annual net profits, was entitled to the "ten percent increment" after his termination because it was not in the nature of a " 'bonus,' that is, merely a gratuity for which [he] had no right to make a demand." Recognizing that the ten percent increment was "loosely termed a bonus or incentive plan," we noted that the contract itself placed the incentive in the category of compensation and on equal footing with the monthly base compensation. *Id.*

In *Tuthill Corp. Fill–Rite Div. v. Wolfe,* 451 N.E.2d 72, 75–78 (Ind.Ct.App.1983), we determined that an employer wrongfully withheld a bonus check after an executive terminated his employment. We determined that the bonus had been calculated, that Wolfe had fulfilled his duty under the terms of the oral agreement because profitably rose during his tenure, and that the bonus was part of the agreed compensation. *Id.* at 75–76. We concluded that the bonus was not in the nature of a "mere gratuity [that is] not enforceable where the employee is not shown to have done or foregone something which otherwise he was not obliged to do or forego." *Id.* (quoting *Spickelmier Indust. v. Pas-*

*sander,* 172 Ind.App. 49, 359 N.E.2d 563, 565 (1977)).

In *Gurnik v. Lee,* 587 N.E.2d 706 (Ind. Ct.App.1992), we determined that a yearly bonus, subject to proration and not tied to performance, constituted "wages" for purposes of the liquidated damages and attorney's fees provisions of Indiana Code §§ 22–2–5–1 and 22–2–5–2. The *Gurnik* court analyzed previous decisions that vacation pay constituted wages, *see Die & Mold, Inc. v. Western,* 448 N.E.2d 44 (Ind. Ct.App.1983) and *Baesler's Super–Valu v. Ind. Comm'r of Labor,* 500 N.E.2d 243 (Ind.Ct.App.1986); that severance pay was a "bonus" not tied to performance and did not constitute wages, *see Wilson v. Montgomery Ward & Co.,* 610 F.Supp. 1035 (N.D.Ind.1985); and that a "bonus" tied to the financial success of the employer, but not the regular work performed by the employee, did not constitute wages for purposes of liquidated damages and attorney's fees, *see Jeurissen v. Amisub, Inc.,* 554 N.E.2d 12 (Ind.Ct.App.1990).

In *Wank v. Saint Francis College,* 740 N.E.2d 908 (Ind.Ct.App.2000), we undertook a thorough review of the statutes, the circumstances of Wank's employment, and the common law to determine that the severance payments offered to Wank were not "wages" for purposes of the portion of the Wage Statute providing for liquidated damages and attorney's fees. We based our determination on three main factors: 1) that the severance payments were not tied to the regular work performed on a periodic basis by the employee which would be payable, if requested, on a twice monthly basis; 2) that the severance payments were not in the nature of deferred payments such as vacation pay; and 3) that the employer did not have a policy of granting severance payments to employees and Wank did not negotiate such payments as a condition of his employment; thus,

the offer of severance payments because of a merger was discretionary and gratuitous, not an entitlement.

Although the circumstances in the present case are closely analogous to those in *Wank,* the last factor, the gratuitous nature of the payments, is not consistent with Cassano's situation in that he did negotiate severance payments as a condition of employment. However, we do not find that factor dispositive of the issue of whether the severance payments here constituted wages, as that term is applied in the Wage Statutes.

In summary, the relevant statutes do not define "salary" as "wages;" the Agreement's reference to the severance payments as "salary" to be continued for nine months refers to the amount and timing of the payments and not the status of the payments as compensation for work performed; and the common law supports a determination that severance payments do not constitute wages because they are not compensation earned for work performed. Accordingly, the severance payments are not "wages." Design is entitled to summary judgment on that count of Cassano's complaint under Indiana Code §§ 22–2–6–1 through 22–2–6–4.

The cause is remanded for further proceedings consistent with this decision.

FRIEDLANDER, J., concurs.

BROOK, C.J., concurs in result with separate opinion.

BROOK, Chief Judge, concurring in result.

I concur in the majority's reversal of the trial court's denial of Design's motion for summary judgment and remand for further proceedings. I write separately, however, because I believe that we need not base our holding on anything other than the Indiana Wage Statute and the Agreement.

As previously mentioned, Indiana Code Section 22–2–9–1(b) defines "wages" in relevant part as "all amounts at which the labor or service rendered is recompensed[.]" Clearly, any payment of Cassano's so-called "salary" after the effective date of the termination of his employment that would not be payment for "labor or service rendered" could not constitute the payment of "wages" under the Indiana Wage Statute. I would reverse the trial court's denial of summary judgment on this basis.