**JUDD v. WASIE.**

No. 14891.

United States Court of Appeals,
Eighth Circuit.

April 15, 1954.

Eugene A. O'Brien, Minneapolis, Minn. (Richard Converse and Carl G. Christensen, Minneapolis, Minn., on the brief), for appellant.

Perry R. Moore, Minneapolis, Minn. (Floyd E. Nelson and Mackall, Crounse, Moore, Helmey & Palmer, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant as plaintiff to recover from appellee as defendant certain alleged contractual bonuses claimed to be due or on which there was a balance due covering a period of some sixteen years. We shall refer to the parties as plaintiff and defendant rather than as appellant and appellee. Plaintiff alleged that in December, 1934, defendant called together five persons whom he designated as his then key employees and at that time he offered to pay them in addition to their regular salaries certain bonuses equivalent to ten per cent of the defendant's net earnings from his business. The said bonuses were to be divided equally among said key employees each being thus entitled to two per cent of the net earnings; that pursuant to this offer plaintiff continued to serve defendant and there was paid him from time to time as bonuses in alleged accordance with the terms of said offer certain sums of money during the period of some sixteen years, with one or two exceptions not here material, but that the sums so paid were in fact not two per cent of the earnings during the said period and further that during said period he had not been paid the bonuses to which he was entitled. Plaintiff asked for an accounting. Defendant in his answer admitted that he had had a meeting with the so-called five key employees and that he had submitted a proposition for the payment of bonuses for the year 1935 and that his proposition had been reduced to writing and that each of said employees had signed such writing. He denied that the bonuses were contractual but were gratuities voluntarily paid as such and that the amount was determined by him and that payments had been made to plaintiff and accepted by him without complaint. He also alleged that his business was incorporated in 1938 and that subsequent to January 1, 1938 plaintiff had not been his employee but had been employed by the corporation and plaintiff was a director and one of its officers; that the corporation continuously during the time plaintiff was employed by it paid plaintiff bonuses year by year, with exceptions not here material, as a gratuity; that all bonuses had been accepted without protest or complaint until plaintiff for good cause was discharged, whereupon he brought this action seeking to recover on account of such alleged balances due on such bonuses on the theory that they were based upon contract and not gratuities.

The case was tried to the court and resulted in findings and judgment in favor of defendant. The court among other things found that in December, 1934, defendant had a conference with his so-called five key employees and that he then offered to pay them bonuses for the year 1935; that his offer was reduced to writing and the writing reflected the terms thereof; that plaintiff was not required to perform and did not perform any duties pursuant to said offer which he was not obligated to perform by his contract of employment; that there was no specific renewal of said offer but that the corporation which employed plaintiff and his co-employees continued to pay the bonuses as a gratuity and not otherwise. The court found specifically that the bonuses were not to constitute additional compensation but were mere gratuities and that they were accepted without objection, complaint or protest until plaintiff was discharged in the year 1950. The court also found that the discharge was justifiable and for good cause. The court concluded that "There never existed a valid and enforceable contract between plaintiff and defendant for the payment of bonus by

defendant or by Merchants Motor Freight, Inc., and that the bonuses given to plaintiff each year, including the rejected tenders of 1949 and 1950, were voluntary, discretionary and gratuitous."

During the course of plaintiff's employment subsequent to the proposition submitted by the defendant for the payment of bonuses, he received from defendant and the corporation by which plaintiff was employed subsequent to January 1, 1938, as bonuses an amount aggregating in excess of $28,000. During the year 1949 plaintiff was ill and was hospitalized and unable to perform the duties of his employment and during that year was not paid bonuses but was paid his salary. He claims the right to recover bonuses for that year. The written proposition proposed to the five key employees in 1934 which the court found embodied defendant's proposition made orally to the five employees reads as follows:

"Whereas the said Wasie is the individual owner of the Merchants Motor Freight, and of the Merchants Transfer Company, and the owner of the majority of the stock of the Merchants Motor Freight, Inc., an Iowa corporation, and the Allen Motor Freight Company, a Minnesota corporation, all of which are engaged in the business of the transportation of merchandise and property by motor truck in and through the states of Minnesota, Iowa, Missouri, Nebraska, and Illinois, with offices in Des Moines, Iowa; Moline, Illinois; St. Louis, Missouri; Kansas City, Missouri; Omaha, Nebraska; and Minneapolis and St. Paul, Minnesota, and

"Whereas said Wasie has employed certain persons as representatives of the above mentioned companies in the aforesaid cities of which the undersigned is one, upon an agreed salary basis for a * * to * * * period, with the right in said Wasie to discharge said representatives or any of them including the undersigned at any time, and

"Whereas said Wasie, subject entirely to the conditions and terms hereof, is desirous of providing additional incentive to the undersigned through the payment of a bonus in the manner and upon the conditions hereinafter set forth,

"Now, Therefore, for the consideration herein appearing, and subject expressly to the terms and conditions herein expressed to be performed and observed by the undersigned, and subject expressly to the waiver hereinafter set forth.

"It Is Agreed:

"I.

"That, in the event the undersigned remains continuously in said Wasie's employment, or in the employment of any of the corporations above named, from the date hereof to December 31, 1935, and in his present capacity, and, subject to and in consideration of the undersigned's agreement to waive any right to an accounting as hereinafter expressed, the said Wasie agrees to pay to the undersigned, in addition to and apart from the presently existing salary arrangement, a sum equal to two per cent (2%) of the net profits of the said Wasie doing business as the Merchants Motor Freight and as the Merchants Transfer Company, and of the Merchants Motor Freight, Inc., an Iowa corporation, and of the Allen Motor Freight Company, a Minnesota corporation, payment to be made at Minneapolis, Minnesota on February 1, 1936.

"II.

"It is specifically understood and agreed that the undersigned shall accept the sum offered by the said Wasie as and for the sum equalling two per cent (2%) of the net profits of said companies, and, as part of

the consideration for the promises of said Wasie herein, the undersigned does hereby waive any right whatsoever to demand an audit or accounting by himself, or by anyone on his behalf, to determine the net profits of said companies, or any of them, or to determine the sum equalling two per cent (2%) of said net profits due from said companies, it being the intention of said Wasie, for competitive and other reasons, to prohibit any examination of the books and records of said company by any discharged employe, all of which is hereby recognized as a proper and valid prohibition by the undersigned. The acceptance of the sum offered by said Wasie, as and for the sum equalling two per cent (2%) of the net profits of said companies shall constitute a full and complete release of any claim of the undersigned against the said Wasie on account thereof.

"III.

"It is specifically understood and agreed that the payment of the above sum of two per cent (2%) of the net profits of said companies shall not be due the undersigned unless he is continuously employed by the said Wasie, or the above mentioned corporations, from the date hereof to and including December 31, 1935, in his present capacity, and that the said Wasie's right to discharge the undersigned from employment, or from his present position, at any time prior thereto, shall in no wise be affected or altered by this agreement. It is further understood and agreed that in no event shall this instrument be construed as a contract for employment, or as a contract for employment for any definite period of time. It is also understood and agreed that if the undersigned is discharged from his present position, or from the employ of any of the aforesaid companies, or if he terminates his employment for any reason, all prior to December 31, 1935, he shall have no claim to the said bonus of two per cent (2%) of the net profits.

"IV.

"It is further understood and agreed that said bonus shall not become due and payable if it is determined by the said Wasie, prior to February 1, 1936, that there are shortages in accounts due to the undersigned's fraud or neglect.

"V.

"This agreement shall supersede all other agreements, oral or otherwise, respecting any profit sharing agreement for the benefit of the undersigned for the calendar year 1936."

The bonuses as actually paid were determined by defendant after consideration of the business of the year and other circumstances. They conformed to no definite formula and the amount of each payment depended upon defendant's judgment after he had ascertained what the profits for the year would be. They did not conform to two per cent of the net income of the business and apparently, at least in a number of instances, exceeded that amount. Plaintiff as an officer and director of the corporation by which he was employed subsequent to January 1, 1938, had access to the records, books and accounts of the corporation and in fact as vice-president of the corporation signed statements as to the income for federal tax purposes. At the trial plaintiff denied having signed the written proposal but defendant testified that plaintiff had so signed as had all four other employees so involved but defendant was unable to find his copies due to the long lapse of time intervening between the execution of the document and the trial of the action based thereon. At least two of these employees had departed this life and their testimony was not available but there was one contract introduced which had been signed by one of these employees and there was evidence that each of these employees had been furnished

with a copy of this contract and the court found that it embodied the provisions of the proposition submitted orally at the conference. Further reference to the findings and the evidence will be made during the course of this opinion.

In seeking reversal plaintiff challenges the sufficiency of the evidence to sustain what are referred to by him as the "controlling findings" and he also charges error in excluding certain testimony of the witness Hugh Anderson.

Based upon these general allegations of error counsel goes far afield in arguing many questions which could not change the result of the action if the court properly held that the bonuses here involved did not constitute part of plaintiff's compensation but were mere gratuities voluntarily bestowed after the performance of the year's services.

In this connection we think it worthy of note that the court found that the proposition submitted by defendant with reference to bonuses was embodied in the written statement. This finding was certainly sustained by the evidence and even if the proposition were susceptible of being construed as a contract for the payment of a bonus as a part of plaintiff's compensation it is to be observed that it contains provisions that the employee " * * * does hereby waive any right whatsoever to demand an audit or accounting by himself, or by anyone on his behalf, to determine the net profits of said companies, or any of them, or to determine the sum equalling two per cent (2%) of said net profits due from said companies, * * * " and that "The acceptance of the sum offered by said Wasie as and for the sum equalling two per cent (2%) of the net profits of said companies shall constitute a full and complete release of any claim of the undersigned against the said Wasie on account thereof." While the court did not find that plaintiff signed this written proposition it did find that this writing embodied the terms and conditions of the oral proposition submitted. Here

it appears without dispute that plaintiff from January 1, 1938, to the date of his discharge for just cause was an officer and director of the corporation paying these bonuses and was chargeable with knowledge of the amount of net earnings of the company, yet he received and retained his bonus checks without protest, objection or complaint and we think he cannot under these circumstances seek the assistance of a court of equity even if his own theory should be adopted as controlling on the trial court. The provisions of the proposition which he construes as the basis of a contractual bonus precludes his right to an accounting or to claim that the bonuses received by him were not in full and complete satisfaction of any claim therefor.

The "controlling findings" challenged by plaintiff as not sustained by the evidence are as follows:

"That such explanation was not in the form of an offer to be accepted by performance of the employees but only as a gratuitous and discretionary bonus for the year 1935; that there was no definite period of time stated or discussed as to the employment of plaintiff or any of the other employees.

"The Court finds that there is no evidence that plaintiff or any of the others accepted defendant's proposal at the conference or in any way commented thereon; that defendant made no definite or specific promise or offer, the acceptance of which depended upon plaintiff's performance or continued employment; that plaintiff did not embark upon performance in 1935, or in any other year, in reliance upon the promise of defendant to pay a bonus, and that the bonus offer each year was not the inducement for remaining in defendant's employ. Defendant's announcement at the 1934 meeting did not condition the bonus upon plaintiff, or any of the other key employees, remaining in defendant's employ, and plaintiff admitted that

it was not discussed. Continuous employment was not a consideration or condition upon which the offer was made and the Court finds that the bonus was not to constitute additional compensation for plaintiff; that plaintiff in 1935 and in subsequent years performed no services which he was not already obligated to perform by his regular employment contract on a week-to-week basis which had been established long before 1934 and the separate existence of which was recognized by substantial and periodic salary increases by defendant and said corporation through the years following 1934 and accepted by plaintiff without objection; there existed no legal consideration given by plaintiff, either at the time of the 1934 conference, or at any time thereafter, to support his claim of a valid and enforceable contract by defendant to pay plaintiff a bonus for any years subsequent to 1934.

"That whether or not bonuses would be given to plaintiff by defendant, while defendant was operating individually up to the end of December, 1937, and by the said corporation through defendant, its president, after 1937, rested solely in the defendant's discretion and judgment and such bonuses were entirely voluntary and gratuitous, the amounts being dependent upon his judgment after he had ascertained what the profits for the particular year had been.

"That there never existed a valid and enforceable contract, oral or written, whereby defendant agreed or became legally obligated to pay plaintiff a bonus for any of the years 1935 to the end of his employment by the corporation in 1950; and the Court finds that plaintiff never believed he had such a contract at any time. The mere fact of payment of bonuses to defendant from year to year was as consistent with the claim of gratuity on defendant's part as with plaintiff's claim that a contract to pay bonuses existed.

"For the years 1949 and 1950 the evidence is undisputed that there existed no offer to pay a bonus, and, finally, for the year 1950, plaintiff rendered unsatisfactory services and was discharged for cause before the end of that year.

"Plaintiff has failed to prove by satisfactory and credible evidence the making of a valid and enforceable agreement by defendant to pay him a bonus for any year, as alleged in his complaint or otherwise. The bonuses plaintiff received throughout the entire time between 1935 and 1949 and those tendered in 1949 and 1950 were given or tendered him as gifts or gratuities in recognition of his past services and dependent upon the earnings of the business for each preceding year, and not pursuant to any promise, obligation or representation by defendant. Plaintiff accepted such sums accordingly and without performing any services or doing any other acts which he was not already obligated to perform in consideration for his regular, fixed and agreed salary."

▆▆▆ The challenge presents mixed questions of law and fact. So far as the findings determine questions of fact they are presumptively correct and may not be set aside by us unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The court presumably determined all conflicts in the evidence in favor of the prevailing party and it was the province of that court to determine the credibility of the witnesses and the weight to be given to their testimony. In considering the question as to whether the challenged findings are sustained by substantial evidence the evidence must be viewed in a light most favorable to the defendant. We are of the view that the facts proven and the inferences fairly deducible therefrom amply sustain all of these findings.

Plaintiff as a witness in his own behalf testified with reference to the conference at which the controverted proposition was submitted by defendant, testifying among other things as follows:

"Well, at that meeting Mr. Wasie told us about his plans for further expanding the company, and he also told us that we were the key employees on whom he depended to help bring about the growth that was anticipated, and he told us that in view of our—in return for the efforts we were to put forth, he was going to allow us to share in the profits of his business. He did state * * * that 10 per cent of all profits over the first $10,000.00 would be set aside for the group of five, to be divided equally or on the basis of two per cent each. He said that this would be an annual arrangement or future arrangement and so long as we were employed we would be—would participate in it.

"Q. Was there any definite time set at that time for your employment? Were you required to work for any definite period of time? A. No, there was no discussion about any definite period of time to be employed.

"Q. Was there any other discussion held at that time? Is that the extent of the discussion at that meeting pertaining to bonus arrangements? A. That would be the extent, yes."

 Accepting plaintiff's version of the proposition, the employees were not obligated to continue in the service any definite time nor to perform any services that they were not already obligated to perform₁ under their contract of employment. A promise to pay an employee a bonus at the end of the year which does not obligate the employee to do or forego doing something that he was not otherwise obligated to do or forego is a mere gratuity. Russell v. H. W. Johns-Manville Co. of California, 53 Cal.App. 572, 200 P. 668; Andrews

v. Bellman, 50 S.D. 21, 208 N.W. 175; Davis & Co. v. Morgan, 117 Ga. 504, 43 S.E. 732; Duncan v. E. H. Cone, Inc., 16 Ga.App. 253, 85 S.E. 203. In Russell v. H. W. Johns-Manville Co. of California, supra, the court considered a case in which the employer had issued a written notice offering a bonus to each employee at the end of the year. The employee in that case was discharged before the end of the year and was paid his regular salary, but sued for the bonuses allegedly due him. In the course of the opinion it is said [53 Cal.App. 572, 200 P. 669]:

"We are unable to perceive upon what theory this judgment in the plaintiff's favor can be sustained. The written notice issued to its salaried employees was in form and upon its face a voluntary gratuity to such of said employees as might be in its service during the entire year 1918. It did not purport to change the terms of their past, present, or future employment, nor in the case of month-to-month employees did it purport to bind the corporation issuing it to a different term of employment than that already existing; nor did it exact or require of such employees that they should make any surrender of their right to quit the corporation service at the close of any month thereafter. The respondent himself does not here contend that he was either required to make, or did in fact make, any such surrender, his utmost claim and proof being that he was willing to remain, and did in fact remain, in the employ of the defendant after receipt of said notice and up to the time of his discharge; but he neither pleaded nor testified, nor did the trial court find, that he was legally bound to so remain or that he in so remaining, did anything other or further than that which he was willing to do and would have done if such notice had never been issued by his employer or received by himself."

In the instant case plaintiff was not required to and did not undertake to remain in defendant's employ for any definite time nor to do nor refrain from doing anything that he was not under his terms of employment required to do or refrain from doing. In a somewhat later case, Andrews v. Bellman, supra, the Supreme Court of South Dakota had occasion to pass upon this identical question. In that case plaintiff claimed she was entitled to a bonus of One Hundred Dollars. There was no obligation on her part to continue in the employment for any specified time nor to do any specific volume of work. In the South Dakota case the case of Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N.W. 769, 44 L.R.A.,N.S., 1214, which is here strongly relied upon by plaintiff is considered and distinguished. In the course of the opinion it is said:

> "Under the contract testified to by plaintiff she was not required to remain in defendant's employ for any specified length of time, nor to perform any specific amount of work within a particular length of time, nor, indeed, to do anything at all to entitle her to the said bonus.

> "In Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N.W. 769, 44 L.R.A.,N.S., 1214, Ann.Cas.1914A, 793, cited and relied on by plaintiff, there was a contract for a year of continuous service. In the course of the opinion the court say:

> " 'The defendant made an offer of extra or additional compensation to any employee who performed a certain number of hours' service within a given period, provided net profits were earned, and provided the employee did not quit or was not discharged before a stated time.'

> "This is the distinguishing feature of this and other cases cited by plaintiff. There is no such provision in the contract shown by plaintiff. In her brief counsel say:

> " 'We appreciate the fact that, under the terms of the contract entered into, the plaintiff, instead of continuing in the employ of the defendant for a period of two and a half years as she did, could have terminated the employment in a week, a month, or any other time after the contract was made, and the defendant would have been legally bound to pay her the $100 he had promised.'

> \* \* \* \* \*

> "The contract shown by plaintiff lacks the essential element of a valid consideration. The most that can be said for it is that it is an unexecuted promise of a gift or gratuity, and cannot be the basis of an enforceable right."

We have considered all of the other contentions urged by plaintiff but in view of our conclusion that the promised bonus was in the nature of a gratuity a consideration of these other contentions would serve no useful purpose as the judgment in any event must be affirmed and it is so ordered.

JOHNSEN, Circuit Judge (concurring specially).

I do not feel that the written promise of the employer to pay a bonus, as set forth in the majority opinion, can properly be said to have made the bonus here a mere gratuity, as the court holds, because the employee "was not required to and did not undertake to remain in defendant's employ for any definite time nor to do or refrain from doing anything that he was not under his terms of employment required to do or refrain from doing."

The instrument submitted by the employer for the employee's signature promised to pay a bonus to the employee for the year 1935, on the condition that net profits would exist for the year, and on the consideration that the employee had remained in the service of the employer throughout that period. An examination of the more recent decisions will show, I think, that the present general view is—and soundly so—that, on

such an offer, if the employee remains in the service of the employer throughout the year, he has earned the right to the bonus as additional compensation for his services, and, if the business has net profits for the year, the employer owes him such additional compensation as a contractual obligation from accepted offer. See Am.Jur., Master and Servant, § 71, pp. 501, 502.

Also, since the bonus plan amounted to a compensation arrangement, the right to the benefit thereof, upon the same condition and consideration as it was initiated, was impliedly renewed and continued as to each succeeding year of employment, until some notice of its withdrawal or some modification of it was appropriately effected. Cf. Leidigh v. Keever, 5 Neb., Unoff., 207, 97 N.W. 801; Laubach v. Cedar Rapids Supply Co., 122 Iowa 643, 98 N.W. 511. And there is no contention here by the employer that the plan, whatever its legal nature or effect might be, had existence only for the year 1935.

On the basis of what I have said, the employee then would ordinarily have a legal right to maintain the present action. But there is a further provision in the instrument, to the effect that the employee has waived the right to an audit of the employer's books in relation to the bonus payment, and also that an acceptance of the amount tendered by the employer as representing 2 per cent of the net profits for the year should constitute a complete release of any claim against the employer on account of the bonus right. These provisions, as in any other situation of waiver or release, are not entitled to be escaped in equity, except upon clear and convincing proof of fraud on the part of the employer in the payments made and in the employee's acceptance of their correctness at the time. The evidence here is not such, it seems to me, as to enable the employee to claim bad faith on the part of the employer in the payments made or to entitle the employee to escape the effect of the acceptance which he has made of them.

This leaves only the two years 1949 and 1950 to be considered, for which the employee was paid no bonus. As to 1949, the evidence shows that during that year the employee had had a protracted illness and that the employer had agreed to pay him his regular salary throughout this period but had made it clear that under these circumstances the employee would not be eligible for any bonus that year. The employee's acceptance of these salary checks, to which he was not entitled, upon this basis, necessarily amounted to a modification of whatever right he might otherwise have had to bonus compensation for that year. And as to 1950, during which the employee was discharged for cause, he was without any right to recover a bonus, under the provision of the instrument that, in case he was discharged during course of the year, "he shall have no claim to the said bonus of two per cent (2%) of the net profits."

On this special basis, I feel that the employee has not established his right to any accounting or recovery, and I would affirm the judgment of the trial court upon this ground.