SPICKELMIER INDUSTRIES, INC. *v.* ROBERT PASSANDER.

[No. 2-1175A344. Filed January 31, 1977.]

*Gene R. Leeuw, Klineman, Rose and Wolf,* of Indianapolis, for appellant.

*Paul E. Brown, Dongus, Stein, Cregor, Messick & Brown,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Defendant-appellant Spicklemier Industries, Inc. (Spieckelmier), appeals from a trial court judgment of Seven Hundred Fifty ($750.00) Dollars plus costs in favor of Plaintiff-Appellee, Robert Passander (Passander) upon his complaint for breach of contract to pay a bonus for services rendered, claiming there was insufficient evidence to establish the existence of a contract.

We reverse.

## FACTS

The facts and evidence most favorable to the trial court's judgment are:

In January of 1971, Passander was employed by Spickelmier as an Executive Vice-President at an annual salary of Twelve Thousand ($12,000.00) Dollars. The initial employment agreement between Passander and Spicklemier was oral and did not provide for the payment of a bonus during 1971.

Facing financial difficulties, Spickelmier skirted the edges of bankruptcy throughout 1971. A Committee of Creditors was formed to oversee its operations, and in November of that year

the Committee projected a small profit for 1971 and recommended that if the profit materialized, bonuses should be awarded to several key employees.

On December 29, 1971, this recommendation was adopted by the Spickelmier Board of Directors and referred to the Board's Executive Committee for implementation. Passander was one of five employees awarded a bonus by the Board for their loyalty to the Corporation during 1971. The suggested bonus for Passander was One Thousand Five Hundred ($1,500.00) Dollars. In January of 1972, the Board's Executive Committee met and discovered earlier estimates of corporate profits were overly optimistic, and there were not enough funds available to fully satisfy the bonus allotments.[1] This prompted the Executive Committee to recommend the bonuses not be paid, but Carl F. Spickelmier, Chairman of the Board, refused to abandon the plan. Instead he negotiated a compromise whereby one-half the originally specified bonus would be paid as planned, with the balance to be paid when and if sufficient funds were available.

Passander consented to Carl's proposition and took one-half of his One Thousand Five Hundred ($1,500.00) Dollar bonus.

In January of 1972, the terms of Passander's employment with Spickelmier were renegotiated and reduced to a written memorandum which provided for a new base salary of Sixteen Thousand ($16,000.00) Dollars per year plus guaranteed bonuses of Five Hundred ($500.00) Dollars per quarter. The memorandum did not mention the unpaid portion of the 1971 bonus. In June of 1972, Passander resigned his position with Spickelmier and later brought this action to recover the remainder of his promised bonus ($750.00) for the calendar year 1971.

---

1. Although he did not attend the meeting, Passander was a member of the Executive Committee as were the other four bonus recipients.

After a trial by court on June 26, 1975, a judgment was rendered in Passander's favor for Seven Hundred Fifty-($750.00) Dollars.

Spickelmier appeals.

## ISSUE

The sole issue for our disposition is:

## IS SPICKELMIER'S PROMISE TO PAY THE BALANCE OF THE 1971 BONUS ENFORCEABLE?

Spickelmier argues that the bonus offered was a mere gratuity. Passander claims he accepted and relied on the offer, thereby creating a contract.

## DECISION

CONCLUSION—It is our opinion the trial court erred in enforcing Spickelmier's promise to pay Passander the residue of the 1971 bonus because there was no evidence of any consideration to support the promise.

While there is no specific Indiana case law on the subject of payment of bonuses under these circumstances to act as a lamp unto our feet, there is abundant law in other jurisdictions enunciating the applicable contractual principles.

Not every promise creates a legal obligation which the law will enforce. A promise must be predicated upon adequate consideration before it can command performance.

Passander's problem is to demonstrate to us that the record contains sufficient consideration to support Spickelmier's promise. Otherwise he was the recipient of an unenforceable gratuity:

A promise of additional compensation to an employee in the form of a bonus, in order to be enforceable, must be clear and explicit and based on a sufficient consideration.

\* \* \*

. . . *A promise to pay an employee a bonus at the end of the year is a mere gratuity and not enforceable where the*

*employee is not shown to have done or foregone something which otherwise he was not obliged to do or forego;* but if the employee is induced thereby to do something which he is not under legal obligation to do, or to forego something which he does not have to forego, the promise is enforceable.

\* \* \*

56 C.J.S. *Master and Servant* § 98 (1948) (emphasis added) (citations omitted).

The record is barren of any evidence indicating Passander furnished consideration for Spickelmier's promise.

The promise of a year-old bonus was made after Passander had already performed the terms of his 1971 employment contract. It was a promise of additional compensation made to employee who had already performed the agreed services:

When a valid contract has been made binding one party to render a promised performance for a specified consideration, his rendition of that performance exactly as required by his existing duty is not a sufficient consideration for a promise of more pay by the other party.

. . . If the foregoing is true, it appears to be equally certain that *a new promise of additional compensation should not be enforceable if it is made after the first party has already rendered his promised performance.* In such a case, the promisor bargains for nothing and receives nothing in exchange for his promise. He has already received everything before he makes the new promise. The element of agreed exchange, or bargain, is lacking. In addition, the promisee has done nothing in reliance on the new promise, so that the action in reliance doctrine is also inapplicable. There are many cases holding the new promise to be not enforceable. (emphasis supplied) *Corbin on Contracts* (1 Vol. Ed.) p. 330-331, § 235 (1952).

*See Baum* v. *Palmer* (1905), 165 Ind. 513, 76 N.E. 108, *Shanks* v. *Fisher* (1956), 126 Ind. App. 402, 130 N.E.2d 231; *Brown* v. *Addington* (1944), 114 Ind. App. 404, 52 N.E.2d 640.

*Also see* 43 ALR3d 503, at 509-510, § 4 (1972).

So Passander's prior service in 1971 was not in reliance on payment of a year end bonus, and no consideration, therefore, existed for Spickelmier's promise in this regard.

Nor did Passander make a reciprocal promise or perform any act concomitant with Spickelmier's promise. The bonus was merely a means by which Spickelmier could reward Passander's diligence during 1971. There was no evidence the bonus was intended to elicit any present response from Passander other than ordinary gratitude.

Past and present services failing to provide consideration, Passander points to Spickelmier's promise to *later* pay the balance of the 1971 bonus as inducing him to continue working for the Corporation in the year 1972, i.e., Passander refrained from exercising his right to terminate employment, and this forbearance constituted consideration.[2]

However, there is no evidence in the record (or any reasonable inference) that Spickelmier offered to pay the balance of the 1971 bonus in exchange for Passander's continued employment with the corporation. Assuming arguendo that such evidence existed, Passander failed to prove he relied upon the promise and thereafter refrained from quitting Spickelmier's service.[3] To the contrary, the record indicates Passander's services for 1972 were procured by a substantial increase in salary (from Twelve Thousand ($12,000.00) Dollars to Sixteen

2.   There is authority for this position:

   [IF] the purpose and effect of the executory promise of a bonus is to induce the employee to refrain from exercising his liberty of quitting and, in reliance thereon, he does so refrain for the period specified, there is sufficient consideration to render the promise enforceable. 1 *Williston, Contracts* (Rev. Ed.) p. 546, § 130(B) (1957).
       *See Montgomery Ward & Co.* v. *Guignet* (1942), 112 Ind. App. 661, 45 N.E.2d 337.
       *Also see Willoughby Camera Stores, Inc.* v. *Commissioner* (2nd Cir. 1942), 125 F.2d 607; *Henderson Land & Lumber Co.* v. *Barber* (1920), 17 Ala. App. 337, 85 So. 35; *Warren* v. *Mosher* (1926), 31 Ariz. 33, 250 P. 354, 49 A.L.R. 1311; *Haag* v. *Rogers* (1911), 9 Ga. App. 650, 72 S.E. 46; *Roberts* v. *Mays Mills, Inc.* (1922), 184 N.C. 406, 114 S.E. 530, 28 A.L.R. 338; *Zwolanek* v. *Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N.W. 769.

3.   Passander never testified that he remained employed with Spickelmier in reliance upon receiving the remainder of the 1971 bonus. A fatal omission.
       *See Judd* v. *Wasie* (8th Cir. 1954), 211 F.2d 826; *Russell* v. *H. W. Jones-Manville Co.* (1921), 53 Cal. App. 572, 200 P. 668; *Borden* v. *Skinner Chuck Co.* (1958), 21 Conn. Supp. 184, 150 A.2d 607.

Thousand ($16,000.00) Dollars per annum) and the guarantee of a quarterly bonus of Five Hundred ($500.00) Dollars with no reference whatsoever to payment of the balance of the 1971 bonus.

As text writers are fond of saying, the promise was "nudum pactum."

The judgment enforcing Spickelmier's gratuitous promise to pay the remainder of the 1971 bonus not being supported by consideration, is therefore clearly erroneous and must be reversed. Ind. Rules of Procedure, Appellate Rule 15 (N).

Reversed.

Sullivan, J. and Lowdermilk, J. (by designation) concur.

NOTE.—Reported at 359 N.E.2d 563.