Allen L. LIGHT and Mary Susanna Light, Appellants–Plaintiffs,

v.

NIPSCO INDUSTRIES, INC., d/b/a Northern Indiana Public Service Company, Appellee–Defendant.

No. 44A05–0009–CV–402.

Court of Appeals of Indiana.

May 9, 2001.

Richard K. Muntz, LaGrange, IN, Attorney for Appellants.

Paul A. Rake, John M. McCrum, Hammond, IN, Attorneys for Appellee.

## OPINION

GARRARD, Senior Judge

The Lights commenced this action against Northern Indiana Public Service Company (NIPSCO), asserting that NIPSCO's failure to properly inspect the hook-up of natural gas to Lights' residence was a proximate cause of injury to Mr. Light. In due course the trial court granted summary judgment to NIPSCO and this appeal followed.

The materials designated to the court by the parties presented evidence of the following facts.[1]  In 1988, Mr. Light

---

1. For the purpose of examining summary judgment we consider the existence of this designated evidence.  We express no opinion as to its proper weight or credibility.  For purposes of this appeal, the parties have agreed these facts are undisputed.

was interested in converting the heating system in his home in Howe, Indiana to natural gas. He contacted Hank Platts, the manager of NIPSCO's office in La-Grange to discuss conversion. Mr. Platts referred Mr. Light to others in the office who furnished information on the advantages of using natural gas. Light expressed interest in the safety of natural gas and inquired if NIPSCO had a list of recommended installers or of installers that it had "Black Balled." He assertedly was told that they did not but that "if the work isn't right, we make them correct it before turning on the gas." Subsequently, Light contacted Kim Hummel and when NIPSCO assured him that Hummel could do the work, Light contracted with him to provide and install a furnace, water heater and air conditioner and asked NIPSCO to install the natural gas supply lines.

Light was not present to observe when Hummel installed the appliances, nor was he present when the gas was turned on. When Light returned home he discovered that they had hot water so he presumed everything was all right. Light does not know who turned on the gas but assumed it was NIPSCO because, earlier, when the line was run on the property and the meter was installed, he was told that it was shut off and that "when the installation is complete, he'll have to call us to come out, and we'll turn on the gas, and we'll inspect it and turn on the gas." There is no evidence that Light called NIPSCO to send personnel to inspect Hummel's work or to turn on the gas, and there is no evidence that Hummel did so.

Nine years later, Mr. Light discovered through another contractor that his water heater was not properly vented. He contacted NIPSCO and discovered that this was permitting carbon monoxide to escape into the home. The gas was shut off until a new water heater with the correct flue was installed.

The Lights contend that their carbon monoxide exposure in the home caused health problems Mr. Light had been experiencing.[2]

On appeal, the Lights acknowledge that NIPSCO owed them neither a general duty to inspect the hookup, nor a contract obligation to do so. They contend instead that NIPSCO voluntarily assumed the duty and is therefore liable for its breach. NIPSCO recognizes longstanding Indiana law enforcing voluntarily assumed duties, but argues that a duty may only be voluntarily assumed by a performance of the undertaking itself. Relying on contract law, it asserts that a mere promise to inspect is unenforceable in the absence of consideration to support it. *See, Spickelmier Industries, Inc. v. Passander*, 172 Ind.App. 49, 359 N.E.2d 563, 564–65 (1977).

From the evidence that the gas was turned on and the representation that NIPSCO would have to be called to accomplish this it is inferable that NIPSCO in fact turned on the gas to the appliances in the dwelling. This evidence, however, does not support the further inference that NIPSCO actually inspected or attempted to inspect the installation of the appliances. Accordingly, the issue presented in this appeal is whether the mere assurance or promise that NIPSCO would inspect the connections and "make them do it right" is sufficient in the absence of any evidence that NIPSCO in fact attempted any such inspection to impose a tort duty of reasonable care.

2. No issues are presented concerning Mr. Light's medical condition and its possible nexus with carbon monoxide exposure.

Indiana tort law has long recognized that where one assumes to act he may thereby become subject to the duty to act with reasonable care towards those who may foreseeably be injured if he does not do so. Commencing with *Baker v. Midland–Ross Corp.*, 508 N.E.2d 32 (Ind.Ct. App.1987), our decisions have equated Indiana law with the provisions of RESTATEMENT (SECOND) OF TORTS, § 324A (1977).[3] In *Baker* the court quoted the provision and apparently applied it in determining that it had been error to refuse a tendered instruction. Two years later, in *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1262 (Ind.Ct.App.1989), a panel consisting of two of the three judges that decided *Baker* stated that in *Baker* the court had adopted § 324A. The *Harper* court then applied the provision but added the requirement that the evidence establish that the defendant should have recognized the careful execution of its undertaking was necessary for the protection of the injured party. The court equated this with the traditional requirement of foreseeability. More recent decisions simply have asserted that Indiana law parallels § 324A. *See Ward v. First Indiana Plaza Joint Venture*, 725 N.E.2d 134, 136 (Ind. Ct.App.2000); *Auler v. Van Natta*, 686 N.E.2d 172, 175 (Ind.Ct.App.1997).

§ 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

While the Restatement provides the caveat that it expresses no opinion whether a gratuitous promise, without in any way entering upon performance, is sufficient to impose liability, Indiana decisions state that a promise is sufficient when coupled with reliance by the injured promisee. Thus, in *Ember v. B.F.D. Inc.*, 490 N.E.2d 764, 770 (Ind.Ct.App.1986), the court stated, "As [defendant] correctly argues, liability for nonfeasance, in connection with a gratuitous duty, is confined to situations when the beneficiaries detrimentally relied on performance, or when the actor increased the risk of harm." (citations omitted).[4]

Citing *Ember*, in *Johnson v. Owens*, 639 N.E.2d 1016, 1019 (Ind.Ct.App.1994) the court again stated that duty might arise when one assumes a duty to act "through affirmative conduct or agreement" and held that the total failure to act, nonfeasance, would nevertheless be actionable where the beneficiary relied on performance or the defendant increased the risk of harm.[5]

---

**3.** We agree with the dissent's comments concerning § 323 of the Restatement.

**4.** As the court explained "nonfeasance" equates with a failure to act despite a gratuitous promise to do so, while "misfeasance" equates with instances where the action was taken or attempted.

**5.** Other cases using the statement that duty may arise through "affirmative conduct or agreement" are *Van Duyn v. Cook–Teague Partnership*, 694 N.E.2d 779 (Ind.Ct.App. 1998) and *Board of Com'rs v. Hatton*, 427 N.E.2d 696 (Ind.Ct.App.1981).

We conclude, therefore, that while a gratuitous promise without more will not impose a duty upon which tort liability may be predicated, when that promise is accompanied by reliance on the part of the promisee, and the reliance was reasonable under the circumstances, a legal duty may be found.

Both the existence and the extent of such a duty are ordinarily questions for the trier of fact. *Ward,* 725 N.E.2d at 136; *Ember,* 490 N.E.2d at 768.

It follows that the evidence designated to the trial court was not sufficient to determine as a matter of law that NIPSCO had not voluntarily assumed a duty to the Lights based upon its representations, or promises, and Lights' reliance thereon. Accordingly, since genuine issues have not been foreclosed as to any of the other elements of Lights' claim, summary judgment was inappropriate.

The judgment is reversed and the case is remanded for such further proceedings as may be necessary.

Reversed and remanded.

BAKER, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting

Without question, a promise should—and usually does—stand for something. However, our legal system has wisely placed limitations on the formal enforceability of *gratuitous* promises. Because I think those limitations should apply here, I must respectfully dissent.

The majority holds that NIPSCO's gratuitous promise may be actionable as a matter of tort law. Specifically, the majority relies on Restatement (Second) of Torts § 324A, which was adopted by this court in *Harper v. Guarantee Auto Stores,* 533

N.E.2d 1258, 1262 (Ind.Ct.App.1989). That section provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The "caveat" immediately following this section declines to express an opinion as to whether making "a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section." Nevertheless, and in the absence of any evidence that NIPSCO actually inspected the work at issue, the majority adopts such a rule: "a promise is sufficient when coupled with reliance by the injured promisee." 747 N.E.2d at 75.

As a preliminary matter, I believe that NIPSCO's conduct in question falls under Restatements (Second) of Torts § 323, rather than § 324A. NIPSCO's alleged promise to inspect was made directly to Mr. Light, not to a third party. However, as the comment to § 324A points out, the same logic and policy considerations are shared by the two sections. It is with this logic and policy that I take issue.

Our lives are filled with many relationships that never do and never should take

on legal significance. A friend is no less a friend because the law does not define what friendship is.

Similarly, we often undertake tasks on behalf of others with the explicit or implicit understanding that the beneficiary can make no claim beyond disappointment when things do not turn out as originally promised or represented. When a relative or friend volunteers to "look at" a malfunctioning motor vehicle or a home one is planning to purchase, I do not believe the common law should impose liability when such inspection either never takes place or turns out to be deficient. The majority's position and the position of §§ 323 and 324A is that liability might well attach. The important limiting concept is one of whether reliance was reasonable, a concept not fully developed by the majority or by the Restatement discussions.

As a matter of contract law, it is well settled that "[n]ot every promise creates a legal obligation which the law will enforce. A promise must be predicated upon ade-quate consideration before it can command performance." *Spickelmier Industries, Inc. v. Passander,* 172 Ind.App. 49, 359 N.E.2d 563, 564 (1977). Under the facts and circumstances before us, I believe that the payments NIPSCO would eventually receive from the Lights for the natural gas to fuel the appliances installed by the third-party contractor could serve as adequate consideration to enforce NIPSCO's promise to inspect under traditional contract theory.

Instead, the majority has embarked down a tort path that will likely have far-reaching and undesirable consequences. For this reason, I must respectfully dissent.