# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**J. MICHAEL KATZ**
**STEPHEN E. SCHEELE**
**DANA J. HADA**
**LISA M. ROSS**
Goodman Katz & Scheele
Highland, Indiana

ATTORNEYS FOR APPELLEE:
HSBC Mortgage Services Inc.

**JEFFREY J. MORTIER**
**LUCY R. DOLLENS**
**JACOB V. BRADLEY**
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:
Ian's Pointe Homeowners Association, Inc.

**RANDY D. RICHEY**
Nationwide Mutual Insurance Company
Carmel, Indiana

ATTORNEYS FOR APPELLEE:
R&G Management Co., Inc. d/b/a
Community Association Services of Indiana

**MICHAEL R. BAIN**
**MARK M. HOLDRIDGE**
Hume Smith Geddes Green & Simmons
Indianapolis, Indiana

FILED

Jan 15 2013, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

SECRENA D. ERWIN, individually and as )
Mother of SHEYENNE R. JENKINS, deceased, )
)
    Appellant - Plaintiff, )
)
        vs. )    No. 32A01-1202-CT-80
)
HSBC MORTGAGE SERVICES, INC., )
IAN'S POINTE HOMEOWNERS ASSOCIATION, )
INC., and R&G MANAGEMENT CO., INC., )
d/b/a COMMUNITY ASSOCIATION SERVICES )
OF INDIANA, )
)
    Appellees - Defendants. )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Robert W. Freese, Special Judge
Cause No. 32D01-0910-CT-3

**January 15, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Secrena D. Erwin (Mother), individually and as mother of Sheyenne R. Jenkins, deceased, appeals the trial court's grant of summary judgment in favor of HSBC Mortgage Services, Inc. (HSBC), Ian's Point Homeowners Association, Inc. (the HOA), and R & G Management Co., Inc., d/b/a Community Association Services of Indiana (CASI) (collectively, Defendants) in the child wrongful death action she filed against Defendants following the tragic drowning death of five-year-old Sheyenne. Mother presents the following restated issues for review:

1. Did the trial court properly grant summary judgment in favor of HSBC?

2. Did the trial court properly grant summary judgment in favor of the HOA and CASI?

We affirm.[1]

On August 12, 2003, Kermit Avedon purchased a home in the Ian's Pointe subdivision in Avon, Indiana. Avedon financed the transaction with two conventional mortgage loans, which HSBC purchased shortly after the closing. The subdivision is governed by the HOA, a not-for-profit corporation whose members are the owners of the individual residences located

---

[1] We held oral argument in this matter on November 27, 2012.

in the subdivision. CASI is the management company for the HOA.

Avedon installed an in-ground pool with an automatic safety cover in his backyard in August 2005. Thereafter, in 2006, he erected a three-sided fence that did not completely enclose the backyard or pool but simply provided privacy from the street side of his corner lot. Avedon did not obtain approval from the HOA prior to installation of the pool or fence. The record reveals, however, that there were no apparent safety violations when the pool and cover were installed. Further, Avedon properly winterized the pool in the winters of 2005/2006 and 2006/2007.

In the summer of 2007, Avedon filed a Chapter 13 bankruptcy petition, which he converted to a Chapter 7 in October 2007. At that time, HSBC ordered a drive-by inspection of the property to determine whether it was occupied, which it was. HSBC also began paying the real estate taxes on the subject property to protect its interest in the property.

In January 2008, while the bankruptcy was pending, Avedon and his family abandoned the property. Avedon called HSBC prior to leaving and stated, "I'm leaving my property. I filed bankruptcy. There is a pool. There is a cover on it. There is a pump. There is no power to the home. It is your home now. I'm leaving on [January 28]." *Appellant's Appendix* at 224. HSBC verified the date that he would be leaving the property before ending the phone call. In addition to shutting off the utilities, Avedon cancelled his homeowner's insurance policy. HSBC received notice of cancellation of the policy from the insurance company in February 2008.

By late winter and early spring of 2008, the swimming pool and cover were in a gross

state of disrepair. In particular, a substantial amount of water had accumulated on top of the pool cover causing the cover to tear from its track on one side and sink several feet into the pool. The pool cover, which was almost entirely underwater, was covered in algae. The murky water also contained debris, including boards from the adjacent fence. The pool and its cover were openly dangerous.

Neighbors began complaining about the dangerous condition of the pool. In April 2008, Jose Romero called CASI and discussed the state of the pool. He indicated that the cover of the pool had caved in and was covered with water and that there was open access to the pool from the street and backyard. The CASI representative thanked Romero for the call and assured him that his concerns would be "taken care of". *Id.* at 432. Romero made another call to CASI about a week later when it appeared no action had been taken with regard to the pool.

Around this same time in April, Lynn Shelton, who lived adjacent to the property and maintained contact with the Avedon family, spoke with Avedon about the deteriorating condition of the pool. Avedon indicated that he could not go back onto the property but that he would contact HSBC about Shelton's concerns. Avedon called HSBC in mid to late April and informed an HSBC representative about the situation. Shelton followed-up with a phone call to HSBC in May and left a voicemail message about the dangerous condition of the pool on the abandoned property.

On May 31, 2008, five-year-old Sheyenne Jenkins was spending the day at the home of her grandparents while her mother and stepfather were working. Her grandparents,

4

Melvin and Janice Jenkins, lived two houses down from the abandoned property. While Janice was in the driveway talking with another neighbor that afternoon, Sheyenne wandered from the home. Shortly thereafter, Janice went inside to look for Sheyenne. When she and Melvin could not locate the child in or around their home, Janice ran toward the pool. She found Sheyenne floating in the five to six feet of water that had accumulated on the sunken pool cover.[2] The child was not able to be revived.

Although the bankruptcy stay was still in force, HSBC hired a contractor to conduct an inspection of the property following the accident. HSBC then contracted to have the pool secured. Since July 2008, HSBC has continued to initiate work orders for and inspections of the property. Avedon was discharged from bankruptcy in December 2008, but HSBC has yet to institute foreclosure proceedings.

On August 28, 2009, Mother filed a complaint, which she amended shortly thereafter, against Avedon, HSBC, the HOA, CASI, and the Jenkinses,[3] alleging that their negligent acts and omissions resulted in Sheyenne's death. On March 15, 2011, HSBC filed a motion for summary judgment, and CASI filed a separate motion for summary judgment in which the HOA joined. Defendants argued that they were entitled to judgment as a matter of law because they owed no duty to Sheyenne to protect her from the dangers of the pool. The trial

---

[2] There was a beach ball floating on top of the water, and finger and shoe prints on the algae-covered pool cover showed where the young child had attempted to climb out of the pool. Further, access to the pool's ladder was blocked by the sunken cover.

[3] The complaint also named as a defendant Henry Cary Woods, Sheyenne's biological father, whom Mother sought to establish had no interest in the child wrongful death proceedings. Mother subsequently obtained a default judgment against Woods.

court held a summary judgment hearing on October 25, 2011. Thereafter, on November 18, 2011, the trial court issued three separate orders respectively granting summary judgment for HSBC, the HOA, and CASI. Mother filed motions to correct error, which the trial court denied by separate orders on January 30, 2012. Mother now appeals.

Our standard of review of a summary judgment order is well settled.

> When reviewing a ruling on a motion for summary judgment, we apply the same standard as the trial court. *Sees v. Bank One, Indiana, N.A.,* 839 N.E.2d 154 (Ind. 2005). A party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *see also id.* The review of a ruling on a summary judgment motion is limited to those materials designated to the trial court. We will accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the grant of summary judgment was erroneous.

*W.S.K. v. M.H.S.B.*, 922 N.E.2d 671, 686 (Ind. Ct. App. 2010) (some citations omitted).[4]

Further, "[i]n a negligence case, summary judgment is particularly appropriate when the court determines that there is no duty because, absent a duty, there can be no breach and, therefore, no negligence." *Dzierba v. City of Michigan City*, 798 N.E.2d 463, 466 (Ind. Ct. App. 2003).

1.

We first address the grant of summary judgment in favor of HSBC. Mother acknowledges that "[p]ossession is unequivocally a threshold issue in this case." *Appellant's*

---

[4]   We observe that the trial court entered specific findings and conclusions in its summary judgment orders. While the findings and conclusions certainly offer valuable insight into the court's rationale and facilitate our review, we are in no way limited by them and may affirm based on any theory supported by the designated evidence. *See Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.*, 867 N.E.2d 203 (Ind. Ct. App. 2007).

*Brief* at 24.  She claims there is a genuine issue of material fact as to whether HSBC possessed the property, as a mortgagee in possession, at the time of the drowning.  She argues that under the circumstances, HSBC was in the best position to prevent Sheyenne's tragic drowning and that public policy supports imposing a duty on HSBC to protect the child from a danger of which HSBC had actual knowledge.

With respect to premises liability, upon which Mother bases her claim against HSBC, only a party who possesses the premises owes a duty to persons coming on to the premises. *See Risk v. Shilling*, 569 N.E.2d 646 (Ind. 1991).  Relying upon the Restatement of Torts, our Supreme Court has defined a possessor of land as follows:

>   (a)   A person who is in occupation of the land with intent to control it or
>
>   (b)   A person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>
>   (c)   A person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

*Id*. at 647 (citing Restatement (Second) of Torts § 328 E (1965)).

In the instant case, the evidence establishes as a matter of law that Avedon was the most recent person who had been in occupation of the property with the intent to control it.  Although he abandoned the property and called HSBC to inform the mortgagee of his intended vacation of the property, there is no indication in the record that at any point prior to the drowning, HSBC acted upon Avedon's unilateral actions by subsequently occupying the property with intent to control it.  Thus, Avedon remained in possession of the property.

Mother acknowledges that HSBC would not acquire legal ownership of the property

7

until it was foreclosed upon, but she argues that "a mortgagee may be in possession of the mortgaged property notwithstanding the provisions of the mortgage or statute of frauds". *Appellant's Brief* at 8. Even if we assume this to be true, still none of the cases cited by Mother establish that a mortgagor may unilaterally transform a mortgagee into a mortgagee in possession and transfer the mortgagor's duties as possessor of the property. *See Federal Land Bank of Louisville v. Schleeter*, 194 N.E. 628 (Ind. 1935) (a mortgage does not "enable the [mortgagee] to take … possession … without a foreclosure and sale according to law. If the mortgagor voluntarily delivers possession to the mortgagee, he *may* hold it; but a court will only put the mortgagee in possession … at the time provided by statute") (emphasis supplied)); *Parker v. Hubble*, 75 Ind. 580, 584 (1881) (a parol agreement that possession shall accompany the mortgage is not enforceable, "but, if made and *voluntarily executed by the parties* to the extent supposed, there is no rule of law or of equity which requires, or could justify, an interference to restore the possession to the mortgagor") (emphasis supplied)). Mother's reliance on these and other forfeiture cases is entirely misplaced. This case does not involve forfeiture, and HSBC took no affirmative action to step in and take possession of the property after default and prior to the drowning.

Moreover, the property in question was an asset of the bankruptcy estate. As such, Avedon was precluded from transferring possession to HSBC and HSBC's actions with respect to the property were undoubtedly circumscribed. Of course, HSBC could have sought permission in the bankruptcy action to address dangers on the property, and the mortgage specifically provided that, in the case of abandonment or bankruptcy:

8

> Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property…, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property…. Securing the Property includes…entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

*Appellant's Appendix* at 68. This same provision of the mortgage agreement, however, indicated: "Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so." *Id*. In the end, although HSBC may have had the right to go onto the abandoned property and secure the pool, this does not equate to a duty to do so.[5]

At the time of Sheyenne's tragic drowning, HSBC had not initiated foreclosure proceedings nor exerted any other type of control over the property. Despite futile attempts by Avedon to place responsibility for caring for the property and pool on HSBC, Avedon remained the possessor of the property at all relevant times. While we understand Mother's displeasure with the limbo in which untold numbers of vacant properties find themselves, the legislature is the place to assert her public policy arguments. On the current state of the law, a phone call such as Avedon's does not automatically transform the mortgagee into the possessor of the property. Rather, the alleged subsequent possessor must take some action to occupy the land with intent to control it. *See Risk v. Shilling*, 569 N.E.2d 646. *See also Jackson v. Scheible*, 902 N.E.2d at 810 ("possession is an issue common to all premises

---

[5] Mother urges also that HSBC was fully aware of the dangerous condition of the pool and could have acted. Knowledge alone, however, is not sufficient to impute liability under a theory of premises liability. Mother must first establish that HSBC had control of the property. *See Jackson v. Scheible*, 902 N.E.2d 807 (Ind. 2009).

9

liability cases …. A theme throughout our premises liability cases is that liability arises from actual control over the condition causing the injury"). Further, actions taken by a vendor/mortgagee to protect its financial investment, such as paying taxes and securing insurance, generally do not establish control over the property rising to the level of a possessor of the property. *See Jackson v. Scheible*, 902 N.E.2d 807.

In the instant case, the trial court properly determined as a matter of law that HSBC was not a possessor of the property and, therefore, owed no duty to protect Sheyenne from a dangerous condition on the property. Accordingly, the trial court correctly granted summary judgment in favor of HSBC.

2.

Mother also challenges the grant of summary judgment in favor of the HOA and CASI. She claims the HOA and CASI's duty to Sheyenne arose from the Declaration of Covenants, Conditions and Restrictions of Ian's Pointe (the Declaration). Mother claims further that CASI gratuitously assumed a duty to take care of the dangerous condition of the pool. We will address each contention in turn.

With respect to a duty to protect Sheyenne arising under the Declaration, Mother directs us to Article XI (entitled General Provisions), Section 11.1, which provides as follows:

> Right of Enforcement. In the event of a violation, or threatened violation, of any of the covenants, conditions and restrictions herein enumerated, Declarant, the [HOA], the City of Avon and Hendricks County (as well as any governmental sub-entity), or any Owner and all parties claiming under them *shall have the right to enforce* the covenants, conditions and restrictions contained herein, and pursue any and all remedies, at law or in equity,

available under applicable Indiana law, with or without proving any actual damages, including the right to secure injunctive relief or secure removal by due process of any structure not in compliance with the covenants, conditions and restrictions contained herein….

*Appellant's Appendix* at 139 (emphasis supplied). This section simply provides the HOA (and others) with a general right of enforcement. Contrary to Mother's assertion, however, Section 11.1 does not impose any duty or obligation upon the HOA to exercise this right. Thus, while it is apparent that Avedon had violated a number of covenants, conditions, and restrictions, the HOA and CASI had no legal obligation pursuant to the Declaration to act upon the violations.

Further, we observe that Mother's reliance on Article III, Section 3.3 of the Declaration is entirely misplaced. Section 3.3 provides:

Certain Obligations and Access Rights to the Common Area.

(a) Except as otherwise set forth in this Declaration, the [HOA], subject to the rights of the Owners as set forth in this Declaration, shall be responsible for the management and control, for the exclusive benefit of the Owners as provided herein, of the Common Area owned by the [HOA] and for the maintenance of the same in good, clean, attractive, safe and sanitary condition, order and repair.

(b) The [HOA] shall have and is hereby granted a general right of access and easement to all of the Common Areas owned by the Association and across the Lots, at reasonable times and at any time in case of emergency, as reasonably required by its officers, directors, employees and their agents an [sic] independent contractors, to the full extent necessary or appropriate to perform its obligations and duties as set forth in this Declaration….

*Id*. at 138. The only obligation imposed by this section is for the HOA to manage, control,

and maintain the common area.[6] In order to perform these obligations, this section provides the HOA with a limited easement across the lots of homeowners to be used to access the common area. Accordingly, this section imposes no obligations or duties relevant to the case at hand.

In summary, Mother provides no support for her assertion that the HOA or its agent, CASI, had a duty arising from the Declaration "to protect Sheyenne." *Appellant's Brief* at 33. Moreover, to the extent Mother argues in her reply brief that a duty arose under the management agreement between CASI and the HOA, we find the argument waived. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("[t]he law is well settled that grounds for error may only be framed in an appellant's brief and if addressed for the first time in the reply brief, they are waived").

Finally, we address Mother's contention that CASI gratuitously assumed a duty to remedy the dangerous condition of the pool. Mother argues that CASI assumed the duty when Jose Romero called and informed CASI of the condition of the pool. At the conclusion of the call, CASI's agent assured Romero that his concerns would be "taken care of". *Appellant's Appendix* at 432. According to Mother, this assurance creates a question of fact regarding gratuitous assumption of duty.

Our courts recognize the gratuitous assumption of duty by one who, through affirmative conduct or agreement, assumes and undertakes a duty to act. *Griffin v. Simpson*,

---

[6] In fact, the obligations imposed upon the HOA by the Declaration generally relate to the management of the common area, including insuring, funding, repairing, and maintaining it. Under the Declaration, the HOA is also tasked with obtaining general liability insurance and providing notice to mortgagees of HOA liens on the property.

12

948 N.E.2d 354 (Ind. Ct. App. 2011), *trans. denied*. Whether a defendant has assumed a duty is ordinarily a question of fact, but when there is no genuine issue of material fact, assumption of a duty may be determined as a matter of law. *Id.*

For an actor to gratuitously assume a duty, the actor must specifically undertake to perform the task he is charged with having performed negligently. *Severson v. Bd. of Trs. of Purdue University*, 777 N.E.2d 1181 (Ind. Ct. App. 2002). "[A] mere gratuitous promise without more is insufficient to impose a duty of care." *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 770 (Ind. Ct. App. 1986). Where there is a complete omission or failure to act on a gratuitous promise (i.e., nonfeasance), liability "is confined to situations when the beneficiaries detrimentally relied on performance…or when the actor increased the risk of harm." *Id*. In other words, "a promise is sufficient when coupled with reliance by the injured promisee." *Light v. NIPSCO Indus., Inc*., 747 N.E.2d 73, 75 (Ind. Ct. App. 2001), *trans. denied*. *See also Board of Comm'rs of Monroe County v. Hatton*, 427 N.E.2d 696, 700 (Ind. Ct. App. 1981) ("reliance lies at the very heart of the cause and is a prerequisite to liability").

In the instant case, Mother has failed to designate evidence that CASI took affirmative steps to remedy the condition of the pool. She simply directs us to an ambiguous statement by CASI that the issue regarding the pool would be "taken care of". Even if we were to take the leap with Mother and infer that this was an assurance that CASI would go onto the property and secure the pool, the fact is that CASI did not act upon this promise in any way. Thus, contrary to Mother's assertions on appeal, her allegations amount to a claim of

nonfeasance by CASI, requiring a showing of detrimental reliance or increased risk of harm. Mother makes no claim that CASI increased the risk of harm, and she directs us to no evidence that Mother, Sheyenne, or the Jenkinses detrimentally relied on CASI's promise to another neighbor.[7] In fact, there is no indication in the record that they were even aware of the conversation prior to the drowning. The trial court correctly determined as a matter of law that this is not a case of gratuitous assumption of duty.

The trial court properly granted summary judgment in favor of Defendants based upon lack of duty. Because we have affirmed the grant of summary judgment on this ground, we need not reach the attractive nuisance issue addressed by the parties.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.

---

[7] Mother's assertion that Romero "and other concerned neighbors" relied upon the promise and forestalled efforts to remedy the condition of the pool on their own is unsupported in the record. *Appellant's Brief* at 36.